SUSAN LAWRENCE, PLAINTIFF IN ERROR, *v.* ROBERT MCCALMONT, HUGH MCCALMONT, AND WILLIAM JOHNSON NEWELL, DEFENDANTS.

The following guarantee, viz.:

"In consideration of Messrs. J. and A. Lawrence having a credit with your house, and in further consideration of $1 paid me by yourselves, receipt of which I hereby acknowledge, I engage to you that they shall fulfil the engagements they have made and shall make with you, for meeting and reimbursing the payments which you may assume under such credit at their request, together with your charges; and I guaranty you from all payments and damages by reason of their default.

" You are to consider this as a standing and continuing guarantee, without the necessity of your apprizing me, from time to time, of your engagements and advances for their house ; and in case of a change of partners in your firm or theirs, the guarantee is to apply and continue to transactions afterwards, between the firms as changed, until notified by me to the contrary."

Is a continuing guarantee, and includes not only transactions under a letter of credit existing at the date of the guarantee, but also transactions which arose under a second letter granted at the expiration of the first; although the second credit contained a proviso "that the bills be drawn by, or in favour

of parties permanently resident in Europe; and if made from the continent, they be made at the customary date, say three months."

The principles laid down in the case of Bell *v.* Bruen, 1 Howard, 169, 186, which should govern the construction of commercial guarantees, reviewed and confirmed.

A valuable consideration, however small or nominal, if given or stipulated for in good faith, is, in the absence of fraud, sufficient to support an action on any parol contract, and this is equally true as to contracts of guarantee as to others.

The consideration in this case was not past.

The question, whether or not the guarantor had sufficient notice of the failure of the principals to pay the debt was a question of fact for the jury.

Where notes are deposited for collection by way of collateral security for an existing debt, the case does not fall within the strict rules of commercial law, applicable to negotiable paper. It falls under the general law of agency; and the agents are only bound to use due diligence to collect the debts.

THIS case was brought up by writ of error, from the Circuit Court of the United States for the southern district of New York.

The facts were these:

Robert McCalmont and the other defendants in error, were co-partners in trade, in London, trading under the name of McCalmont, Brothers and Company.

In the year 1838, J. and A. Lawrence were merchants who resided at Brooklyn, near New York, in the same house with their mother, Susan Lawrence, the plaintiff in error. Their counting-house was in the city. McCalmont, Brothers and Co. had agents, J. Gihon and Co., also residing in New York.

On the 21st of November, 1838, J. and A. Lawrence obtained from the agents at New York the following letter:

*New York, 21st Nov.,* 1838.

Messrs. McCalmont, Brothers and Co., London:

Gent.:—We have granted to Messrs. J. and A. Lawrence of this city, a credit with you of £10,000, say ten thousand pounds sterling, to be availed of within six months from this time, in such drafts as they may direct, at four months' date, against actual shipments of goods for their account, and coming to their address; said goods to be forwarded through you or your agents.

The above credit is granted under their engagement to cover your acceptances before maturity, by direct remittances from this country of approved sixty day bills—seconds of exchange to be handed to us for transmission to you. You are to charge one per cent. com-

mission on the amount accepted, and to keep the account at five per cent. interest per annum.　　We are, gents., your ob. st.,

　　　　　　　　　　　　　　JOHN GIHON and Co.

In the course of the trial, William Davidson being under examination, the plaintiff's counsel asked the witness whether the letter of credit, of 21st November, 1838, was delivered on an agreement for the guarantee.　To this evidence the defendant's counsel objected, as irrelevant and inadmissible.　The judge decided that it was admissible for the purpose of showing the nature and character of the plaintiff's claim on J. and A. Lawrence, but not to vary the construction of the guarantee, and admitted the evidence; to which the defendant's counsel excepted.

The witness then testified that the said letter of 21st November, 1838, was delivered on Mr. Lawrence's proposal of his mother's security for the credit, which will be presently mentioned.

On the 22d of November, 1838, this letter was transmitted to England with the following endorsement:

　　　　　　　　　　　*New York, Nov.* 22, 1838.

Messrs. McCalmont, Bros. and Co.

Gent. :—You will please accept our, Mr. A. T. Lawrence's, dfts. for amount of within credit, in such amounts, and at such times, as he may draw.　　Your ob. st.,　　　　J. and A. LAWRENCE.

On the 10th of December, 1838, Mr. A. T. Lawrence, being then in England, received the above letter, and forwarded it to London, accompanied by the following letter from himself:

　　　　　　　　　　　*Nottingham, Dec'r* 10*th,* 1838.

Messrs. McCalmont, Bros. and Co., London:

Gent. :—I now hand you enclosed, Messrs. J. Gihon and Co.'s letter of credit on you, in favour of my house, J. and A. Lawrence, endorsed over to me for £10,000 sterling, and will you please write me, giving authority to draw for the amount?　I observe that one of the conditions of the credit is, that goods to the amount of the same shall be shipped through your agents.　Will you please inform me the names of the houses in Liverpool and London, through whom you would wish the shipments made?　Please address me at this place.

Respectfully, your obt. servts.,　　　　　A. T. LAWRENCE.

On the 11th of December, 1838, McCalmont, Brothers and Co., acknowledged the receipt of the above letter as follows:

Lawrence *v.* McCalmont et al.

*London, 11th Dec. 1838.*

A. T. Lawrence, Esq., Nottingham :

Sir :—We have to acknowledge receipt of yours of yesterday's date; covering the letter of credit in your house's favour, opened by our mutual friends, Messrs. John Gihon and Co., say to the extent of ten thousand pounds sterling, to be availed of by drafts on us at four months against actual shipments of goods for their account, and going to their address ; said goods, if shipped from Liverpool, to be forwarded through our agent there, Nathan Caims, Esq., India Buildings, or from hence through us, or such shipping agent as you may appoint; but in that case, a copy of the bill of lading to be lodged with us prior to presentation of your drafts, and such drafts to appear within thirty days from date of shipment.   This credit to be availed of within six months from the 21st ulto., and your house undertaking to comply with the other stipulations stated in it by Messrs. J. Gihon and Co., viz. : that they engage to cover our acceptances before maturity, by direct remittances from United States by approved bills of sixty days, the seconds to be forwarded to us through our agents, Messrs. John Gihon and Co., your house to pay us one per cent. commission on the amount of our acceptances and disbursements; the account to be kept at five per cent. interest per annum, which credit we hereby confirm to you, trusting that in opening an account with your respectable firm it will lead to a mutually agreeable and profitable correspondence.

We remain, sir, your most obedt. servt.,

McCALMONT, BROS. and Co.

It is to be understood that the above credit is the only one you have in Europe.                              McC., BROS. and Co.

On the 17th of December, 1838, Susan Lawrence, the plaintiff in error, wrote the following letter:

Messrs. McCalmont, Brothers and Co., London:

Gent. :—In consideration of Messrs. J. and A. Lawrence having a credit with your house, and in further consideration of one dollar paid me by yourselves, receipt of which I hereby acknowledge, I engage to you that they shall fulfil the engagements they have made and shall make with you, for meeting and reimbursing the payments which you may assume under such credit at their request; together with your charges, and I guaranty you from all payments and damages by reason of their default.

You are to consider this a standing and continuing guarantee without the necessity of your apprizing me, from time to time, of your engagements and advances for their house; and in case of a change of partners in your firm or theirs, the guarantee is to apply and continue to transactions afterwards between the firms as changed, until notified by me to the contrary.

Yours, respectfully,          Susan Lawrence.

Under these documents, advances were made and settled; and for the transactions within the six months, from November 21, 1838, nothing was claimed.

At the expiration of the six months the credit was renewed by the following letter:

*New York, June 12th,* 1839.

Messrs. McCalmont, Brothers and Co., London:

Gent.:—With reference to our letter of 21st November last, opening a credit on your good selves, favour Messrs. J. and A. Lawrence for £10,000, to be drawn within six months from that date, and which expired by limitation last month. We hereby renew the same for a like period from the date hereof, and under the same stipulations, with this proviso, that the bills be drawn by, or in favour of parties permanently resident in Europe; and if made from the continent, they be made at the customary date, say three months.

We remain, &c.,          John Gihon and Co.

In the course of the trial William Davidson, again called by the plaintiff's counsel, was asked, whether at the time of the renewal of the credit in June, 1839, a conversation took place with Mr. Lawrence respecting the application of the guarantee to it; to which the defendant's counsel objected; but the judge admitted the same, to show the nature and character of the plaintiff's claim on J. and A. Lawrence, but not to affect the construction of the guarantee; to which the defendant's counsel excepted. The witness then testified that Mr. Lawrence, on that occasion, called on him, and asked if it was agreeable for witness' firm to continue the credit for £10,000. Witness replied, that he had no objection to continue it on the same terms as before; stating that it was to be on his mother's guarantee attached to the previous credit; he answered that he did not expect it on any other terms, or without the guarantee. Witness was in a hurry, and said that he should refer to it, to find out whether the guarantee was for a particular credit, or was a continuing guarantee.

Witness afterwards referred to the letter of guarantee, and subsequently drew up the letter continuing the credit, and delivered it to Mr. J. D. Lawrence, and exhibited to him his mother's letter; he read it

The plaintiffs' counsel then offered to prove, that both the house of J. Gihon and Co., and J. and A. Lawrence acted upon the guarantee as a continuing guarantee. To this, the defendant's counsel objected; but the judge admitted the evidence, for the purpose of showing that both acted upon it as a continuing guarantee, but not to vary the construction of the guarantee itself; to which the defendant's counsel excepted. The witness then testified, that Mr. Lawrence and he both agreed that it was a continuing guarantee, and as such no new letter was needed.

Witness testified that their house received sundry bills, receivable, understood and represented to be business paper, not at maturity when received, to be collected and realized, as far as they could do it, and the proceeds to be remitted to the plaintiffs for the credit. It was a distinct understanding between witness' firm and J. and A. Lawrence, that they received this paper subject to its encashment, on being paid at maturity. Witness has had a statement made of the proceeds of the paper thus deposited. Witness' firm had realized from it, and remitted £1309, 16*s.* 6*d.* The amount due on the plaintiffs' said account with J. and A. Lawrence, crediting those remittances, and charging interest to the third day of May, instant, is £9712, 11*s.* 4*d.*—amounting in dollars, at $4 85 to the pound sterling, to $47,105 95.

On the 28th June, 1839, this letter was received by Mr. A. T. Lawrence, being still in England, and forwarded with the following letter from himself.

*Nottingham, June* 28, 1839.

Messrs. McCalmont, Bros. and Co.

Dear Sirs:—By the steamer "Great Western," I have received a letter of credit for £10,000, granted to our house by your friends Messrs. J. Gihon and Co., on your house, which I now hand you enclosed. £5000 of the same I wish you to hold subject to the drafts of Messrs. Jones, Gibson and Ord, of Manchester, drawn at such times and for such amounts as they may deem proper. The balance you will hold subject to my draft, or the drafts of such parties as I may advise at the time of their drawing.

I am, gent., your ob't. serv't.            A. T. LAWRENCE.

It is understood, of course, in case of your confirming the above

named credit, that the remittances to meet the drafts drawn against it, shall be in such bills as are approved of by your friends in New York.

On the 5th of July, 1839, the receipt of the above was acknowledged by the following letter addressed to the house in New York.

London, 5th July, 1839.

Messrs. J. and A. Lawrence, New York:

Gent.:—Your favours of 6th and 24th May, were duly received with their enclosed remittances, which you will find at your credit in the annexed statement of your account current to 30th ulto.

This account we hope you will find correct, and the bills about coming due will, we doubt not, have your usual attention.

The further credit for £10,000 on your account opened by Messrs. J. Gihon and Co., we have confirmed to your Mr. A. Lawrence, on the understanding that it is to be met by remittances from New York, satisfactory to J. Gihon and Co.

We are gent., your most obd't. serv't.,

McCalmont, Bros. and Co.

Upon this credit J. and A. Lawrence drew several drafts in the months of July and August, 1839.

On the 31st of October, 1839, J. and A. Lawrence addressed the following letter to the London bankers:

New York, 31st Oct., 1839.

Messrs. McCalmont, Bros. and Co., London:

Gent.:—We were in hopes that we should have been enabled, ere this, to have made you a remittance to meet your acceptances for our account, due 13th and 19th Nov., but such is the state of our money market, that it is almost impossible to get money at any rate. The best of our commercial paper is offered freely at three and four per cent. per month discount; and owing to the deranged state of our internal exchanges, it is impossible to collect amounts due us in other cities, except at a ruinous rate. Exchange on Philadelphia, only 96 miles from this, is 15 per cent. discount to-day. Under all these circumstances, we have to beg a little indulgence on your part. We shall remit you the moment it is in our power. We have offered your friends, Messrs. John Gihon and Co., to place our business paper in their hands in settlement, but they have declined at present. Browns and other bankers are settling in this way.

We are gent'n, resp'y, &c.        J. and A. Lawrence.

Lawrence *v.* McCalmont et al.

On the 24th of January, 1840, McCalmont, Brothers and Co. transmitted their account current to the Messrs. Lawrence, the receipt of which was acknowledged in the following letter :

*New York, May* 30, 1840.

Messrs. McCalmont, Bros. and Co., London :

Gent. :—Your favour of 24th January came duly to hand, enclosing your account current with us to 31st December last, showing balance due you on that day of £10,349 8*s.* 5*d.*—say ten thousand three hundred and forty-nine pounds 8*s.* 5*d.* which we find correct. On 18th March last, we made a payment on your account to Messrs. J. Gihon and Co., of $11,822 26—say eleven thousand eight hundred and twenty-two $\frac{26}{100}$ dollars, for which we have their acknowledgment as your agents.

Respectfully, your obd't. serv't.　　　J. and A. LAWRENCE.

On the 29th of May, 1840, John Gihon and Co. addressed the following letter to Susan Lawrence :

*New York, May* 29*th,* 1840.

Mrs. Susan Lawrence :

Madam :—We enclose on behalf of Messrs. McCalmont, Bros. and Co., a copy of the account of Messrs. J. and A. Lawrence with them, showing a balance due of £10,349 8*s.* 5*d.*—say ten thousand three hundred and forty-nine pounds eight shillings and five pence sterling, on first January last, with interest. These gentlemen not having fulfilled their engagements to reimburse this account, we claim payment of you under your guarantee to Messrs. McCalmont, Bros. and Company.　　　Respectfully, yours,　　　J. GIHON and Co.,

Agents of McCalmont, Bros. and Co., of Londo~

In July, 1840, an action of trespass on the case was brought ~ the Circuit Court by McCalmont, Brothers and Co., against Susan Lawrence upon the guarantee; who pleaded the general issue.

Evidence was given by the plaintiff, upon the trial, to sustain the above facts. The defendant offered evidence that sundry notes were deposited in the hands of John Gihon and Co., by J. and A. Lawrence for collection, and that due notice of their not being paid was not given to them and to Susan Lawrence.

The counsel for the defendant then asked the court to charge the jury upon the points of law arising in the case, as follows, viz. :

1st. That the said credit of 21st November, 1838, is a standing and continuing credit during the six months.

2d. That defendant's guarahtee of 17th December, 1838, is con- fined to the said credit, both as to time and amount.

3d. That the acceptances and claims of the plaintiffs demanded in their declaration in this suit, are not covered by the guarantee of the defendant aforesaid.

4th. That the new credit aforesaid of the 12th of June, 1839, is not a continuance or repetition of the first credit, but a departure from it, and is not covered by or embraced in the defendant's said guarantee.

5th. That the nominal consideration of one dollar, and the past consideration stated in defendant's said guarantee, are not, nor is either of them, sufficient to sustain the said guarantee.

6th. That the evidence that the said J. and A. Lawrence agreed to give a guarantee at the time said credit of 21st November, 1838, was given, is not sufficient in law to render valid the consideration expressed in defendant's said guarantee, or to sustain the said guarantee.

7th. The facts being ascertained, the question whether the notice given to the defendant by the plaintiffs of the failure of the said J. and A. Lawrence to remit to cover the plaintiffs' acceptances was reasonable, is a question of law, and no notice, sufficient in law, was given of such failure to the defendant.

8th. If the sufficiency of such notice be a question exclusively of fact, a reasonable and sufficient notice was not given to her of such failure of J. and A. Lawrence to remit as aforesaid.

9th. The notes received by the plaintiffs, through their agents to collect, ought, when there was a failure of payment, to have been regularly protested, and due notice thereof served on the defendant and J. and A. Lawrence ; and, on failure thereof, a credit should be allowed for the same.

The judge thereupon charged the jury, that the plaintiffs were not precluded from recovering under the guarantee in evidence by reason of any supposed want of consideration therefor; and the same was not without sufficient consideration.

That the said guarantee of the 17th December, 1838, was not limited to the credit of November 21, 1838, but was a standing and continuing guarantee, and did apply to, and was sufficient to em- brace, transactions arising after the said credit of November, 1838, was expired.

That the new credit of June 12, 1839, and the advances and

transactions under it, were not in law without the scope of the guarantee of December 17, 1838; and that the plaintiffs were, under the evidence, entitled to recover for the same under the said guarantee.

That the defendant was entitled to a reasonable notice of the default of the principal debtors, to enable her to take measures for her indemnity; that it was for the jury to consider, whether under all the circumstances in evidence, the defendant had not had such notice.

That 'as to the notes turned over by the principal debtors to J. Gihon and Co., as the same were merely lodged with the latter, on their engagement that the proceeds of them, when received, were to be passed to their credit, the want of protest of any such notes as were dishonoured, or of notice thereof to the said J. and A. Lawrence would not entitle the defendant to charge the plaintiffs with the amount of such notes, or to claim a deduction for that amount.

And with that charge left the said cause to the jury: unto which charge, and to the refusal of the judge to charge otherwise, and as requested by defendant as aforesaid, the defendant's counsel then and there excepted.

The jury found a verdict for the plaintiffs for $47,105 97.

The cause was argued by Mr. *Wood*, for the plaintiff in error, (Susan Lawrence,) and was to have been argued by Mr. *Lord* and Mr. *Sergeant*, for the defendants in error; but after Mr. *Lord* had finished his argument, the court declined hearing further counsel on that side. Mr. *Wood* replied; and his two arguments are consolidated.

*Wood* made the following points:

1. Supposing the defendants' guarantee might extend to a new continuing credit; it did not cover the credit of June 12, 1839, there being a variance from the first, in requiring a permanent resident in Europe, to draw or endorse the bills to be accepted, and in requiring the bills, if drawn from the continent, to be drawn at three months.

2. These variances might have impaired the means of J. and A. Lawrence to meet their payments, and thus increased the risk of the defendant.

3. But whether the variances were detrimental or not, they so changed the terms of the credit as to put it without the scope of the guarantee, and to warrant the defendant in saying, "*non hac in fœdera veni*," and the charge was in this particular erroneous.

4. The credit, or letter of credit of the 21st November, 1838, is

the exclusive subject-matter of the guarantee of the defendant below, declared upor., and said guarantee does not extend to any future or other credit.   Because,

1st. It recites such credit as the subject-matter to be covered by it.

2d. It guaranties the fulfilment by J. and A. Lawrence of their agreements made and to be made for reimbursing the payments assumed by the plaintiffs below, under that and no other credit.

3d. Said credit being a continuing credit for six months, and extending to renewals within that period, the guarantee is satisfied, as a standing and continuing one, by confining it to that credit alone.

4th. The provision in the guarantee that it is to stand and continue without notice of engagements and advances, and notwithstanding a change of partners in the plaintiff's firm, was designed, not to extend the guarantee beyond the first credit, but to modify it as a continuing guarantee, by dispensing with some of the qualities of such a guarantee.

5th. This satisfies the language of the guarantee without extending by a forced construction the credit beyond the original six months.

6th. The judge erred, therefore, in inferring and charging that said guarantee was not confined to the first credit, because it was a standing and continuing guarantee.

5. There is no valid consideration to support this guarantee. Because,

1st. By the law of New York the consideration must be substantial, and be set forth in the written instrument of guarantee.

2d. Of the considerations expressed in this instrument, one is nominal and the other past, and without any previous request on the part of the defendant, either proved or set forth in the instrument.

3d. If the evidence to show the consideration nominal was not conclusive, it should have been left to the jury to pass upon.

6. There was a total failure to prove a reasonable notice by the plaintiffs to the defendant of the failure of J. and A. Lawrence to remit, and the justice erred in leaving it to the jury to infer such notice.   Because,

1st. The reasonableness of the notice when the facts are ascertained, is a question of law, and the court should have charged the jury that the notice shown was, in point of law, unreasonable.

2d. Supposing it a question of fact, the verdict was, in this particular, without evidence to support it.

7. The justice erred in charging the jury that J. and A. Law-

rence were not entitled to notice of the dishonour of the notes, lodged with the plaintiffs or their agents, and by them received for collection.

8. The judgment being erroneous in the above and other particulars ought to be reversed.

*Wood* then stated that the first and main ground relied upon for reversing the judgment below, was the variance between the first and second credit, which took the second out of the scope of the guarantee. This ground assumes that the first credit is confined to one transaction of £10,000, and covers assumptions only to that amount.

This guarantee consists of two parts. The first part is clearly confined to the first credit, and does not authorize any change in the mode of credit. It recites that credit, and guaranties the reimbursement of the plaintiffs below under such credit, meaning that credit.

The second part of the guarantee provides that it shall be standing and continuing. This of course, upon the above assumption, extends it to future and other credits. But the general rule is, that where a party guaranties a dealing and then provides for the guarantee to continue, it extends to other dealings only of the same kind and character. Any variance is fatal. Russel *v.* Perkins, 1 Mason, 368; Ludlow *v.* Simond, 2 Caines's Cases in Error, 1; Walsh *v.* Baillie, 10 Johns. Rep. 189; 1 B. and P. 34; Hunt *v.* Smith, 17 Wend. 179.

The following cases are more particularly in point, as they show a variance in paper and credit. Dobbins *v.* Bradley, 17 Wend. 422; Edmonston *v.* Drake, 5 Peters, 637, 639; Hoff *v.* Hadley, 5 Bing. 54; Campbell *v.* French, 6 Term Rep. 200; Barstow *v.* Bennet, 3 Campb. N. P. R. 221.

These cases fully show that the variance, even when supposed to be beneficial, takes the case out of the guarantee.

The requirements in the second credit of a permanent drawer or endorser in Europe was material. It subjected J. and A. Lawrence to the necessity of giving a premium or reciprocating the favour. If the person of whom they bought should draw or endorse, he must guaranty to the bank out of which the money should be raised the solvency of the plaintiffs below.

The extension of the credit on bills from the continent to four months instead of three, to which they were restricted in the second credit, straitened their operations. It is no answer, to say that no such paper was made under the second credit. It was a part of that

contract of credit and varied from the first, and, as such, it took the case out of the guarantee. This very variance may have caused J. and A. Lawrence to withdraw their operations from the continent and confined them to England, and this may have caused their failure.

But it is maintained that the peculiar language of this guarantee takes it out of this general rule and sanctions the variance.

In the first part of the guarantee, she stipulates that J. and A. Lawrence shall fulfil the agreements they have made and shall make, &c. This is relied upon as sanctioning the variance. Assuming that this authorizes not only future but different agreements, it is manifest it can have no such result. The agreements there spoken of, are not the assumptions of the plaintiffs below which are guarantied, but the arrangements of J. and A. Lawrence for reimbursing the plaintiffs. And this shows the whole fallacy of the argument. The credit of 21st November has two important objects. 1st. The acceptances, assumptions, and advances on the part of the plaintiffs. 2d. The arrangements on the part of J. and A. Lawrence for reimbursing them on account of such advances. The above clause in the guarantee refers to the latter and not the former. Of course it does not authorize a change in the former.

In the next place, much reliance is placed on the qualifying language in the second part of the guarantee. Here it dispenses with a notice to her from the plaintiffs below of their engagements and advances to J. and A. Lawrence. Hence it is inferred that there may be not only new but different engagements and advances by these plaintiffs from those embraced in the first credit. But this conclusion is entirely too broad. The whole object of the provision is not to vary the kind of engagements and advances, but to dispense with notice. It has been a moot point whether there ought to be notice to the guarantor of new transactions, though now settled otherwise in this court. The character of the engagements and advances is not affected at all by this qualifying clause, but is left subjected to the general rule applicable to a guarantee continuing.

Lastly, the clause authorizing a change in the firms is relied upon. It is difficult to conceive how this provision for a change in the firms can authorize a change in the guarantee in other particulars. The guarantee is to continue and apply to transactions between the firms as changed. The words "to continue and apply" would seem to convey the idea that the guarantee is to continue the "same," except

so far as modified by applying it to the firms as changed. A vague and loose construction of a guarantee under the pretence of liberalizing it, can only serve to involve the whole subject in uncertainty. A change in a firm, where the business and good-will continues, leaves it substantially the same firm. The rule that a continuing guarantee does not extend where there is a change in the firm, shows the strength of the principle, which can be impaired only with the prospect of increasing litigation.

General words in an instrument, even where they purport to confer a power, are confined to the particular subject. Hogg v. Smith, 1 Taunt. 347; 8 Wend. 494; 6 East, 507.

The second ground relied on for reversal is, that the guarantee extended only to the credit of the 21st of November, 1838. This depends upon the previous question, whether that credit was continuing, or was confined to one transaction of £10,000. The following cases are relied upon to show that it was a continuing credit for the period of six months, and if so, the language of the guarantee is fully satisfied by confining it to that one credit. There was ample time to have repeated the transactions under that credit so as to cover a second sum of £10,000. Mason v. Pritchard, 12 East, 227; Merle v. Wells, 2 Campb. 413; Douglass v. Reynolds, 7 Peters, 113.

In the third place, it was contended that the consideration was insufficient to support the guarantee. It was admitted that the court would not make new bargains for the parties, however unequal the contracts may be. But the rule requiring a consideration to support a parol contract means a substantial and not a nominal consideration. Two shillings and six-pence may be a consideration, provided it was really intended as such; but if designed to be merely nominal, it would not suffice. One dollar, according to a well-known usage, is generally inserted for a nominal consideration, it being customary to insert it in cases where a nominal consideration will suffice, and therefore a party is not estopped from showing it was nominal. There was evidence in the case to satisfy the jury that the consideration was nominal, and it ought to have been left to the jury to pass upon. The credit recited in the guarantee as a consideration was clearly meant to be the credit of the 21st of November, which was a fixed credit for a definite period already established by contract, and no other credit existed between the parties. It was therefore a part consideration, and not sufficient to support the guarantee. Chitty's Contracts, p. 12.

The plaintiffs below failed to give to the defendants a reasonable notice of the failure of J. and A. Lawrence to remit, which failure occurred in October, 1839; notice was given on the 29th of May following—she living within a few minutes' walk of their agents, through whom the whole arrangements of the plaintiffs were effected.

The reasonableness of the time when the facts are ascertained, as in this case, is a question of law. There was nothing to be left to the jury. The facts were clear, and the notice given was manifestly unreasonable. The notes lodged with the plaintiff by J. and A. Lawrence as collateral security, when protested, should have been subjected to the like notice. The " strict" notice required to affect an endorser was not necessary; but a reasonable notice ought to have been given. Philip v. Astling, 2 Taunt. 212.

There was nothing in the relationship between the defendant below and J. and A. Lawrence that should dispense with the ordinary requirements of the law in regard to guarantees. On the contrary, that relationship subjected her the more fully to that species of influence which is brought to bear upon those who ordinarily go surety for friends.

This court has heretofore been deeply impressed with this consideration. 5 Peters, 637; 9 Wheat. 680.

In 7 Cranch, 90, the court, with Chief Justice Marshall as their organ, say: "It is the duty of the individual who contracts with one man on the credit of another, not to trust to ambiguous phrases."

*Lord* then addressed the court in an argument, of which the following is a brief.

The Lawrences were purchasers in English market (not on continent) and wanted credit there to pay. Their mother guarantied; guarantee in 1838; postage; preferences; credit it induced; intended to induce; terms very broad and liberal. Principle of construction; original liability, as inducing party to enter into the transaction.

Law. Decisions of this court complete.

Construction. Bell v. Bruen, 1 Howard, 186; Mauran v. Bullus, 16 Peters, 528; Douglass v. Reynolds, 12 Peters, 499, 7 Peters, 122; Mayer v. Isaac, 6 Mees. and Wels. 612; as to construction, to be according to fair, full import of terms, without forcing a construction.

Notice, not requisite; successive advances under a general engagement. 12 Peters, 504.

Explanatory circumstances may be shown. 1 Howard, 186; Lee

*v.* Dick, 10 Peters, 493; Brooks *v.* Haigh, 10 Adol. and Ellis, 309, (37 E. C. L. R.)

Consideration. 10 Adol. and El. 309; 2 C. and H. Ph. Ev. 216; 5 Bing. New Cases, 577, Dutchman *v.* Troth.

Notice of default. 12 Peters.

Construction of papers. Guarantee.

"Having a credit with your house." Words capable of embracing past, present, and future.

"And in further consideration of $1;" receipt acknowledged; refers to legality, and to make effectual.

"I engage they shall fulfil the engagements." Plural words, referring to engagements of J. and A. Lawrence.

"They have made and shall make with you." "Have," refers to past; "shall," to future.

"For meeting and reimbursing the payments." Guarantee for payments.

"Which you may assume." "May," both past and future assumptions—not "shall," future, but "may," indefinite.

"Under such credit." Credit with your house; whatever credit will embrace "such" refers to.

"At their request." That refers both to past and future; least decisive circumstance.

"You are to consider this a standing and continuing guarantee." Evidently decisive of its character; vitally decisive.

"Without necessity of your apprizing me, from time to time, of your engagements and advances for their house." Not a limitation; for notice of successive advances under the same credit not necessary; an amplification or confirmation, for context is of amplitude, and notice of renewals might be needful.

"From time to time," could not refer to drafts under the one credit, all of which were to be used in a period of six months.

"Of your engagements;" plaintiffs'; only one engagement under the letter of 21st of November, viz. to honour bills to be drawn, but the word is plural.

"Advances." By letter 21st of November, no advance was to be, but acceptances covered.

"And in case of a change of partners." "And" connects with "without."

"Standing guarantee," with two explanations, waiving notice, and with permanency of corporation.

" Change of partners in your firm or theirs;" not shown change of firm contemplated in either; such double change not to happen within the short six months; evidently contemplated renewal; the guarantee is to apply to " transactions afterwards;" clearly, future contemplation; not only change of firms, but transactions afterwards.

" Until notified by me to the contrary." Not only ordinary continuance until notice, but such continuance notwithstanding change of firm.

If no previous letter of credit, undoubtedly this guarantee would have covered more than one credit.

Is there any thing to limit? Said letter of November limits. Not a question of possible construction of that letter, but probable. If she never saw the letter or knew of it; then construction of guarantee as if no letter. If she saw the letter or knew it.—

" A credit of £10,000—to be availed in six months—in such drafts, &c.—against actual shipments;" a credit for goods to be purchased; not repeated purchases in six months of £10,000; the amount a strong circumstance to qualify.

" In such drafts," &c., imports amount of all drafts to £10,000— this is the natural and fair import.

" In six months." Drafts at four months; takes one month to buy and ship—in practice, took the whole six months; on notice of shipment, see account, time to sell to procure bills to cover. Not a natural construction to have this credit a continuing credit. Suppose this letter of 21st November lodged with a Nottingham house.

Not a continuing credit; no contemplation of continuous dealing expressed on this letter. Melville v. Hayden, 3 Barn. and Ald. 593; Rogers v. Warner, 8 Johns. R. 119; Whitney v. Givot, 24 Wendell, 84. The action of the parties under it; the Lawrences did not attempt to eke it out by drawing anew, although they showed that they wanted a new credit.

If not a continuing credit, then clearly guarantee cannot be a standing and continuing guarantee unless it contemplates new letters of credit.

If asked, Why letter to six months if guarantee continuing? Answer, It might well become inconvenient for McCalmont, Bros. and Co., to renew so large engagements at such a period.

If letter of 21st of November is a continuing credit for six months, still the guarantee contemplates no such termination.

1. No limitation of time in guarantee. If intended, it would have been expressed—so much expressed, this would also have been expressed.

2. Notice of engagements and advances waived—only one engagement of McCalmont—no advances here contemplated; the acceptances were to be covered.  "At their request," contemplates a future request not in this letter of 21st November.

3. "Engagements they have made and shall make"—cannot be satisfied if confined to the previous letter, for one engagement already made—no plural, no future.

4. "Payments you may assume," contemplates rather future than present—a word indefinite, to embrace both.

5. "From time to time," cannot reasonably be cut down to six months; or rather to the short time for the new drawing of bills, *i. e.* sixty days after the first drafts were drawn and covered.

6. "Change of partners"—this obviously contemplated a continuance beyond one set of drafts.

On the whole, a fair reading of the paper called for a continuance and renewal of the credit.

If "continuing and standing guarantee" no objection, that credit not renewed until after first one terminated.

The reference to the guarantee did not imply a doubt of its meaning, but the contrary—it only implied carefulness as to its terms.

II. No want of consideration. On face of paper, clear consideration of value.  Opening the paper, is there want of consideration. Can they open the paper for this purpose at law; it is valid on its face.   It is like a sealed bond, as to validity on its face.  They may open the paper as a receipt to recover the consideration if not paid, but that supposes stipulation valid on our part so as to give them title to the consideration.   Suppose consideration, instead of $1 to be $500, would non-payment vitiate the guarantee?  Dutchman *v.* Troth, 5 Bing. N. C. 577 ; 2 Ph. Ev. (C. and H.) 216, note 194. Like bargain and sale of lands; why not identical?  The consideration there and here only to give form of law to intent of parties. But the letter of 20th November, delivered on the promise of this guarantee, was consideration.    Adoption of previous promise. Andrews *v.* Poutrac, 24 Wendell R. 288.

Again, Suppose paper opened : defendant must show actual want of consideration, so as not to intend to bind.   Real consideration ; the promise by her sons, on which defendants acted, she informed and confirmed it.   Again, if she had refused, defendants' agents could have countermanded and have protested against part of the drafts.   Having a credit would have ceased.

3. Guarantee supposed continuing, or no need of this question. If continuing, having a credit renewed was full consideration.

III. No variance in new credit. The guarantee, in terms of amplest kind; allowed of any future agreements with J. and A. Lawrence as to reimbursements, either for shorter or longer credit of reimbursement; either for reimbursement by cash or bills; for smaller amounts, for narrower terms.

Again, the subject guarantied was the engagement of McCalmont and Co., and their payments. Now if credit were broader or not, but bills were drawn exactly within the first credit, those engagements guarantied.

But, the letter 21st November contemplated no drawing from the continent. Not presumed to draw except at customary rate, that three months, (letter Jan. 12,) but bills under old credit four months; showing no bills for continent. New credit allowed bills for continent and so broader: but guarantee not broader; only ask to cover bills within old terms. If we had given two new letters, one for continent, one for England, no ground to contend latter not covered; the guarantee is not that we shall give the wider credit, but that the Lawrences shall pay the bills within the contemplation of the parties.

No additional security called for. Again, the stipulation as to parties permanently residing, &c. This declaratory only; just as the bills under the credit of November 21; it was optional with us, and not insisted on; it was evidently to guard against an abuse of the credit in this country; it was merely expressing the previous understanding of the parties as it had been acted on. It did not and could not prejudice the Lawrences or defendants; they were to draw, to pay for goods to be bought in England; the new letter fully allows this.

IV. Notice of default. J. D. Lawrence in court, son of defendant, living with her, united interests to large amount. If any damage actually, they knew, we did not. If examined, I have shown ability to provide. Notice, first merely to give surety notice before suit; subsequently applied for purpose of giving him opportunity to get indemnity. Look to substance, not like notice on a draft. The court told jury object of this notice; left them to say if notice was there. Actual notice of demand was proved; knowledge in season for indemnity was clearly submitted to jury and found by them.

V. Want of protest. The notes turned over, were turned over not as negotiated but deposited; like notes in a bank for collection.

Not a conditional payment. No liability sought against J. and A. Lawrence as endorsers. We hold subject to encashment, to be collected and realized as far as they could do it, and the proceeds to be remitted to plaintiffs for the credit. Distinct understanding that they received this paper subject to its encashment, on being paid at maturity. Here merely a question of *onus*; were plaintiffs under the technical obligation to notify J. and A. Lawrence, who had already failed? Evidently a mere deposit for collection, not a negotiation in way of business.

Mr. Justice STORY delivered the opinion of the court.

This is a writ of error to the Circuit Court for the southern district of New York.

On the 21st of November, 1838, J. and A. Lawrence obtained from the agents (Messrs. Gihon and Co.) at New York, of McCalmont, Brothers and Co., of London, the following letter of credit:

*New York, 21st Nov., 1838.*

Messrs. McCalmont, Brothers and Co., London:

Gent.:—We have granted to Messrs. J. and A. Lawrence of this city, a credit with you of £10,000, say ten thousand pounds sterling, to be availed of within six months from this time, in such drafts as they may direct, at four months' date, against actual shipments of goods for their account, and coming to their address; said goods to be forwarded through you or your agents.

The above credit is granted under their engagement to cover your acceptances before maturity, by direct remittances from this country of approved sixty day bills—seconds of exchange to be handed to us for transmission to you. You are to charge one per cent. commission on the amount accepted, and to keep the account at five per cent. interest per annum. We are, gents., your ob. st.,

JOHN GIHON and Co.

The letter of credit was delivered on Mr. Lawrence's proposal of his mother's (the plaintiff in error's) security for the credit. On the 17th of December, 1838, Mrs. Lawrence gave the following guarantee:

Messrs. McCalmont, Brothers and Co., London:

Gent. :—In consideration of Messrs. J. and A. Lawrence having a credit with your house, and in further consideration of one dollar

paid me by yourselves, receipt of which I hereby acknowledge, I engage to you that they shall fulfil the engagements they have made and shall make with you, for meeting and reimbursing the payments which you may assume under such credit at their request; together with your charges, and I guaranty you from all payments and damages by reason of their default.

You are to consider this a standing and continuing guarantee without the necessity of your apprizing me, from time to time, of your engagements and advances for their house; and in case of a change of partners in your firm or theirs, the guarantee is to apply and continue to transactions afterwards between the firms as changed, until notified by me to the contrary.

Yours, respectfully,                    SUSAN LAWRENCE.

Under these documents, McCalmont, Brothers and Co. made the stipulated advances, which were repaid; and on the transactions included within the six months from 21st of November, 1838, nothing has been claimed by the London house. About the expiration of the six months, Mr. Lawrence (one of the firm of J. and A. Lawrence) at New York called on the agents of McCalmont, Brothers and Co., and asked if it was agreeable for the agents to continue the credit for £10,000. The reply of one of the agents was, that there was no objection to continue it on the same terms as before, stating that it was to be on the mother's guarantee attached to the previous credit. Mr. Lawrence then answered, that he did not expect it on any other terms, or without the guarantee. The agent then wished time to examine whether the guarantee was for a particular credit, or was a continuing guarantee; and having referred to the letter of guarantee, they drew up and delivered to Mr. Lawrence a second letter of credit, (Mr. Lawrence and the agents both agreeing that it was a continuing guarantee, and as such no new letter was needed from the mother.) The second letter of credit, dated on 12th of June, 1839, was as follows:

*New York, June 12th, 1839.*

Messrs. McCalmont, Brothers and Co., London:

Gent.:—With reference to our letter of 21st November last, opening a credit on your good selves, favour Messrs. J. and A. Lawrence for £10,000, to be drawn within six months from that date, and which expired by limitation last month. We hereby renew the same for a like period from the date hereof, and under the same stipula-

tions, with this proviso, that the bills be drawn by, or in favour of parties permanently resident in Europe; and if made from the continent, they be made at the customary date, say three months.

We remain, &c.,                          · JOHN GIHON and Co.

Under this second letter of credit bills were drawn and paid by McCalmont, Brothers and Co., to an amount exceeding in the whole the £10,000 stipulated for. The bills being all drawn at four months. The firm of J. and A. Lawrence not having made any remittances to pay the new advances, and firm having failed, the agents of the London house on the 29th day of May, 1840, addressed the following letter to Mrs. Susan Lawrence, giving her notice of the non-payment of the advances.

*New York, May 29th, 1840.*

Mrs. Susan Lawrence:

Madam:—We enclose on behalf of Messrs. McCalmont, Bros. and Co., a copy of the account of Messrs. J. and A. Lawrence with them, showing a balance due of £10,349 8s. 5d.—say ten thousand three hundred and forty-nine pounds eight shillings and five pence sterling, on first January last, with interest. These gentlemen not having fulfilled their engagements to reimburse this account, we claim payment of you under your guarantee to Messrs. McCalmont, Bros. and Company.          Respectfully, yours,      J. GIHON and Co.,

Agents of McCalmont, Bros. and Co., of London.

She declining to pay the deficit, the present action of assumpsit was brought against her to enforce the payment. At the trial upon the general issue, in addition to the facts already stated, it was in evidence that during the whole period of these transactions, Mrs. Lawrence resided at Brooklyn, (New York,) in the same house with her sons, J. and A. Lawrence. There was also evidence in the cause to show that McCalmont, Brothers and Co., had by their agents, certain notes belonging to the firm of J. and A. Lawrence, and endorsed by the firm for collection, and the proceeds when received were to be applied towards the liquidation of the debt due to the London house, subject to their encashment on being paid at maturity, under which the sum of £1309, 16s. 6d. had been realized. The notes thus deposited for collection, which were dishonoured at maturity, were protested accordingly, and the original plaintiffs offered the protests and notices to J. and A. Lawrence of the dishonour in evidence, but the evidence as to some of the notices was

not full. Much other evidence was given at the trial, which, however, it is not necessary to state.

The counsel for Mrs. Lawrence then asked the court to charge the jury as follows:

1st. That the said credit of 21st November, 1838, is a standing and continuing credit during the six months.

2d. That defendant's guarantee of 17th December, 1838, is confined to the said credit, both as to time and amount.

3d. That the acceptances and claims of the plaintiffs demanded in their declaration in this suit, are not covered by the guarantee of the defendant aforesaid.

4th. That the new credit aforesaid of the 12th of June, 1839, is not a continuance or repetition of the first credit, but a departure from it, and is not covered by or embraced in the defendant's said guarantee.

5th. That the nominal consideration of one dollar, and the past consideration stated in defendant's said guarantee, are not, nor is either of them, sufficient to sustain the said guarantee.

6th. That the evidence that the said J. and A. Lawrence agreed to give a guarantee at the time said credit of 21st November, 1838, was given, is not sufficient in law to render valid the consideration expressed in defendant's said guarantee, or to sustain the said guarantee.

7th. The facts being ascertained, the question whether the notice given to the defendant by the plaintiffs of the failure of the said J. and A. Lawrence to remit to cover the plaintiffs' acceptances was reasonable, is a question of law, and no notice, sufficient in law, was given of such failure to the defendant.

8th. If the sufficiency of such notice be a question exclusively of fact, a reasonable and sufficient notice was not given to her of such failure of J. and A. Lawrence to remit as aforesaid.

9th. The notes received by the plaintiffs, through their agents to collect, ought, when there was a failure of payment, to have been regularly protested, and due notice thereof served on the defendant and J. and A. Lawrence; and, on failure thereof, a credit should be allowed for the same.

The judge thereupon charged the jury, that the plaintiffs were not precluded from recovering under the guarantee in evidence by reason of any supposed want of consideration therefor; and the same was not without sufficient consideration.

That the said guarantee of the 17th December, 1838, was not limited to the credit of November 21, 1838, but was a standing and continuing guarantee, and did apply to, and was sufficient to embrace, transactions arising after the said credit of November, 1838, was expired.

That the new credit of June 12, 1839, and the advances and transactions under it, were not in law without the scope of the guarantee of December 17, 1838, and that the plaintiffs were, under the evidence, entitled to recover for the same under the said guarantee.

That the defendant was entitled to a reasonable notice of the default of the principal debtors, to enable her to take measures for her indemnity; that it was for the jury to consider, whether under all the circumstances in evidence, the defendant had not had such notice.

That as to the notes turned over by the principal debtors to J. Gihon and Co., as the same were merely lodged with the latter, on their engagement that the proceeds of them, when received, were to be passed to their credit, the want of protest of any such notes as were dishonoured, or of notice thereof to the said J. and A. Lawrence would not entitle the defendant to charge the plaintiffs with the amount of such notes, or to claim a deduction for that amount.

And with that charge left the said cause to the jury: unto which charge, and to the refusal of the judge to charge otherwise, and as requested by defendant as aforesaid, the defendant's counsel then and there excepted.

The jury found a verdict for the plaintiffs for $47,105 97 cents; upon which judgment was rendered for the plaintiffs; and upon that judgment and the exceptions taken at the trial the present writ of error has been brought.

Some remarks have been made on the argument here upon the point in what manner letters of guarantee are to be construed; whether they are to receive a strict or a liberal interpretation. We have no difficulty whatsoever in saying, that instruments of this sort ought to receive a liberal interpretation. By a liberal interpretation, we do not mean, that the words should be forced out of their natural meaning; but simply that the words should receive a fair and reasonable interpretation, so as to attain the objects for which the instrument is designed and the purposes to which it is applied. We should never forget that letters of guarantee are commercial instruments—generally drawn up by merchants in brief language—sometimes inartificial, and often loose in their structure and form; and to construe the words

of such instruments with a nice and technical care would not only defeat the intentions of the parties, but render them too unsafe a basis to rely on for extensive credits, so often sought in the present active business of commerce throughout the world. The remarks made by this court in the case of Bell *v.* Bruen, 1 How. R. 169, 186, meet our entire approbation. The same doctrine was asserted in Mason *v.* Pritchard, 12 East R. 227, where a guarantee was given for any goods he hath or may supply W. P. with, to the amount of £100; and it was held by the court to be a continuing guarantee for goods supplied at any time to W. P. until the credit was recalled, although goods to more than £100 had been first supplied and paid for; and the court on that occasion distinctly stated that the words were to be taken as strongly against the guarantor as the sense of them would admit of. The same doctrine was fully recognised in Haigh *v.* Brooks, 10 Adol. and El. 309, and in Mayer *v.* Isaac, 6 Mees. and Wels. 605, and especially expounded in the opinion of Mr. Baron Alderson. It was the very ground, in connection with the accompanying circumstances, upon which this court acted in Lee *v.* Dick, 10 Peters, 482, and in Mauran *v.* Bullus, 16 Peters, 528. Indeed, if the language used be ambiguous and admits of two fair interpretations, and the guarantee has advanced his money upon the faith of the interpretation most favourable to his rights, that interpretation will prevail in his favour; for it does not lie in the mouth of the guarantor to say that he may, without peril, scatter ambiguous words, by which the other party is misled to his injury.

Passing from these general considerations, let us now address ourselves to the points made at the argument. The first point is, that the second advance was made upon terms and under an agreement materially variant from that on which the guarantee was given, without any communication with the guarantor or her consent thereto. The variances insisted on are two; first, in requiring the bills to be drawn by or in favour of parties permanently resident in Europe; secondly, that if the bills were drawn from the continent of Europe, they should be made at the customary date, say three months. We think that there is no variance whatsoever, which is not fairly within the scope of the original guarantee, and was so contemplated by J. and A. Lawrence, as well as by the agents of the London house. This is explicitly proved by the evidence; for, upon the question arising, both the Lawrences and the agents agreed that it was a continuing guarantee, and as such no new letter of guarantee was needed. It is

true that Mrs. Lawrence was no party to this interpretation of the instrument; but then it is strong evidence to establish. that it was neither a forced nor unnatural interpretation of the words.   And the agents of the London house agreed to make the second advance upon the faith of it.

Now, looking to the very words of the guarantee, we see that it contemplated—not a single advance and then it was to end—but a continuing guarantee, and the very words are found in it.   It also contemplated not only agreements which had been already made between J. and A. Lawrence and the agents, but also future agreements.   The guarantor says: "I engage that they shall fulfil the agreements they have made, and shall make with you for meeting and reimbursing the payments which you may assume."   And again: "You are to consider this a standing and continuing guarantee without the necessity of apprizing me from time to time of your engagements and advances for the house."   "So that new engagements and new advances were contemplated to be made to which the guarantee should attach without notice thereof."   And this is not all—for the guarantee goes on to provide for its continuance in case of a change in the partners of either firm, (a change which would ordinarily be fatal to a guarantee;) and that the guarantee should apply to and continue upon transactions afterwards between the firms so changed, until notified by her to the contrary.   It seems plain from all this language, that a series of new transactions, new agreements, and new engagements were within the contemplation of the parties; not advances for six months alone, but advances from time to time, for an indefinite period, until notice to the contrary should be given by the guarantor.   It is difficult to conceive of any language more definite and more full to express the real intention of the parties. The original advance was, indeed, agreed to be made in the manner stated in the first letter of credit; and if there be any variance between the terms of the first and the second letter of credit, that was left solely and exclusively for the immediate parties J. and A. Lawrence and the agents to adjust and consider.   They might enter into any new engagements as to the mode of drawing the bill, and the time which they were to run at their pleasure, without breaking in upon the true intention of the guarantee.   All the stipulations of the first letter of credit were retained in the second, and an additional provision made, that if bills were drawn from the continent of Europe they should be made at the customary date and by a permanent resident.   But this

left J. and A. Lawrence at full liberty to draw direct on London at four months, if they chose; and in point of fact no bills were ever drawn by them except direct on London, and not from the continent. The additional liberty given, or condition imposed, was not availed of; and, if it had been, it would not have in any manner exonerated the guarantor from her responsibility. Without, therefore, looking to the question whether these variances might or might not have been material, if new arrangements and engagements had not been within the scope of the guarantee, we are of opinion, that the objection is, in the present case, not maintainable.

This view of the matter disposes also of the second, third, and fourth points made at the argument.

The fifth point is, that there is no valid consideration to support the guarantee. This is pressed under two aspects; the first is, that the consideration was past and not present; for the letter of credit had been already delivered to J. and A. Lawrence by the agents of the London house. The second is, that the payment of the one dollar is merely nominal and not sufficient to sustain the guarantee, if it had been received; and it is urged that it was not received. As to this last point, we feel no difficulty. The guarantor acknowledged the receipt of the one dollar, and is now estopped to deny it. If she has not received it, she would now be entitled to recover it. A valuable consideration, however small or nominal, if given or stipulated for in good faith, is, in the absence of fraud, sufficient to support an action on any parol contract; and this is equally true as to contracts of guarantee as to other contracts. A stipulation in consideration of one dollar is just as effectual and valuable a consideration as a larger sum stipulated for or paid. The very point arose in Dutchman *v.* Tooth, 5 Bingham's New Cases, 577, where the guarantor gave a guarantee for the payment of the proceeds of the goods the guarantee had consigned to his brother, and also all future shipments the guarantee might make in consideration of two shillings and sixpence paid him, the guarantor. And the court held the guarantee good and the consideration sufficient. In Brooks *v.* Haigh, 10 Adol. and El. 309, 323, the court held that a surrender by the guarantee of a former guarantee, even if it was not of itself binding upon the guarantor, was a sufficient consideration to take the case out of the statute of fraud and to sustain a promise made on the footing thereof. But, independently of all authority, we should arrive at the same conclusion. The receipt of the one dollar is acknowledged; no

fraud is pretended or shown ; and the consideration, if standing alone in a *bona fide* transaction would sustain the present suit.

As to the other point, that the consideration was past, it admits of several answers, each of which is equally decisive.    In the first place, although the Messrs. Lawrence had received the letter of credit before the guarantee was given, yet it was a part of the original agreement contemporaneous with the letter of credit, that it should be given ; and if the guarantee had not been given, the whole advance might have been recalled as a fraud upon the London house.    In the next place, it does not appear that all the bills for the £10,000, under the first letter of credit, were drawn before the guarantee was actually given ; and if they were not, certainly it would attach upon the bills drawn under the first credit after it was actually given.    The contract was then a continuing contract on both, and partially performed only by one.    In the next place, the guarantee itself uses language susceptible of being treated as a present continuing consideration *in fieri*.    It is " in consideration of Messrs. J. and A. Lawrence having a credit with your house ;" now, the word " having" imports a present or future advance, just as much as a past.   The word " having" is in the present tense ; and if the parties then understood the letter of credit to be *in fieri*, and to be absolute only upon a condition subsequent, viz. : the giving of the guarantee, the word is the most appropriate which could be used.    The case of Haigh *v.* Brooks, 10 Adol. and El. 309, approaches very near to the present.    There the guarantee was " in consideration of being in advance to L. &c., I guaranty, &c."    The Court of King's Bench thought that the words " being in advance" did not necessarily import a past advance, but might be applied to a present or future advance.

But that which puts the whole matter in the clearest light and beyond the reach of legal controversy, is that the advances now sued for were all made after the second letter of credit was given ; and if the guarantee applied (as we hold it did) to those subsequent advances under the new engagements, then the consideration was complete as upon a present and not as upon a past consideration.    In every view, therefore, in which we can contemplate the objection it has no just foundation in law.

As to the sixth point on the question, whether due notice of the failure of Messrs. J. and A. Lawrence to repay the advances had been given ; it was a mere question of fact for the consideration of the jury, as to whether the guarantor had reasonable notice or not.

They have found a verdict for the plaintiffs, and we are not at liberty to disturb it in a court of error.

As to the seventh point, the notes having been left for collection only with the agents of the London house, although endorsed by the Messrs. Lawrence, they do not fall within the strict rules of commercial law applicable to negotiable paper. Admitting for the sake of the argument, that notice was not punctiliously given by the agents, still it resolves itself into a mere question of due diligence on the part of the agents to collect the notes, and falls under the general law of agency. No evidence was shown at the trial to establish any loss or damage on the part of Mrs. Lawrence for want of due protest and notice, (if they were not made ;) and in the absence of such proof we are not at liberty to presume that the agents did not do their duty.

The case of Swift *v.* Tyson, 16 Peters, 1, is entirely distinguishable from the present in its leading circumstances. There, the question was, not whether a person receiving a note as collateral security or for an antecedent debt was not bound to due diligence in its collection, otherwise he made it his own, which was not doubted ; but, whether taking it as collateral security or in payment of an antecedent debt, he was not to be treated as a *bona fide* holder for a valuable consideration, unaffected by any unknown equities between the original parties. This court held that he was.

Upon the whole we are all of opinion that there was no error in the rulings of the court, and the judgment is, therefore, affirmed with costs.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the southern district of New York, and was argued by counsel. On consideration whereof, It is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed with costs and damages at the rate of six per cent. per annum.