EASTON *v.* GERMAN-AMERICAN BANK.

*(Circuit Court, S. D. New York. July 8, 1885.)*

**1. PLEDGE—DUTY OF PLEDGEE.**

When negotiable instruments are pledged as collateral it is the duty of the pledgee, not only so to deal with them as not to destroy their value, but he is to use ordinary diligence to make them available for the payment of the debt; and if he suffers indorsed paper to mature without resorting to the necessary steps to charge the indorser, or fails to pursue reasonably the primary parties, he may become responsible for any loss that may ensue.

**2. SAME—DUTY, WHEN PERFORMED.**

When the pledgee has exercised ordinary diligence to secure the fruits of the pledge for the benefit of the pledgeor, in view of all the circumstances of the particular transaction, his duty has been fully discharged.

**3. SAME—PLEDGE OF BONDS BEING PART OF ISSUE SECURED BY TRUST DEED.**

Where bonds, part of an issue, all of which are secured by a fund to be realized. by a public sale of real estate upon public notice by a trustee for the bondholders and the grantors in a trust deed, are pledged, the pledgee owes no duty to the pledgeor of bidding at the sale of the land, and may lawfully bid and become a purchaser of the land himself.

**4. SAME—SALE OF LAND.—PURCHASE BY PLEDGEE.**

B. borrowed of defendant on his note $27,500, and deposited as collateral 40 bonds, part of an issue of 100, secured by a deed of trust with power of sale on land in Illinois. B. failed to pay his notes, and the land was sold by the trustee pursuant to the terms of the trust deed, and was bought in by an agent of the bondholders, and part of it conveyed by him to the defendant. *Held,* that the defendant did not sustain such a fiduciary relation to B. as to preclude it from acquiring a valid title to the land, although the relation of pledgeor and pledgee existed between B. and the defendant at the time.

In Equity.

*Charles P. Crosby,* for plaintiff.

*Edward Salomon,* for defendant.

WALLACE, J. In April, 1875, the firm of Bowen Brothers borrowed $27,500 of the defendant, giving notes payable, respectively, two, three, and four months from that date. As collateral security for the payment of this loan, Bowen Brothers deposited with the defendant 40 bonds of the denomination of $1,000 each, made by them payable to bearer five years from date, with interest semi-annually, and bearing date April 1, 1873. These bonds were part of a series of 100 of like tenor and amount, all of which were secured by a trust deed of certain real estate in Cook county, Illinois, executed by Bowen Brothers to one Smith, as trustee, for the purpose of securing the prompt payment of the said bonds and the interest thereon, in whosesoever hands the same might be. The trust deed provided that in case of default in payment of the bonds or interest it should be lawful for the trustee, on the application of the holder of any of said bonds, to sell the said real estate, or any part thereof, and all the right and equity of redemption of the grantors therein, at public vendue, to the highest bidder, for cash, and upon making such sale to execute and deliver to the purchaser a deed of conveyance in fee of the premises sold, which sale and conveyance should be a perpetual bar, both in law and equity, against the grantors, their heirs and assigns, and all other persons claiming under them. Bowen Brothers have never paid the defend-

ant's loan to them. By the terms of the pledge made by Bowen Brothers to the defendant of the 40 bonds, the defendant was authorized, on non-payment of the notes at maturity, to sell the collaterals at the board of brokers, at public auction or at private sale, and without notice to Bowen Brothers, and to apply the proceeds of such sale to the payment of the notes. The defendant has never made a sale of the collaterals, pursuant to the terms of the pledge, and still retains the bonds.

In January, 1877, the trustee in the trust deed, upon the application of the State Savings Institution of Chicago, the holder of 32 of the bonds, upon which no interest had been paid, sold the premises, after due notice, at public auction, to one Dexter, the highest bidder, for $50,000 cash. The sale was regular, and the trustee conveyed to Dexter conformably to the terms of the power in the trust deed. In purchasing the real estate, Dexter acted as agent for the holders of the bonds, including the defendant, he having been authorized by the holders to bid for and purchase the property for them jointly, in order to protect their interests. Thereafter, he conveyed to the defendant 40-100 of the property purchased by him, and in a partition suit, subsequently brought, a separate portion of the real estate was set off to the defendant in lieu of its undivided interest in the property. No part of the purchase money paid by Dexter was actually advanced by the defendant, but the defendant credited Bowen Brothers with 40-100 of the amount upon their loan, leaving Bowen Brothers still indebted to the defendant in the sum of several thousand dollars.

In February, 1881, the defendant sold and conveyed the real estate thus acquired by it to one Dore, for the sum of $56,000. The complainant claims to have acquired all the interests of Bowen Brothers, and all their cause of action against the defendant growing out of the transaction, by mesne transfers from their assignee in bankruptcy. He files this bill upon the theory that the defendant is bound to account for the $56,000, the proceeds of its sale of the real estate to Dore, and for the rents and profits during the time the defendant was in possession of the real estate. It is not alleged in the bill that the sale of the real estate was not fairly made, or that the sum for which it was purchased was not a fair price, or that the defendant acted otherwise than in entire good faith, and for the sole purpose of protecting its own debt. The theory of the bill is that the pledgeors are entitled as a matter of strict right to the profits made by the defendant by a fortunate sale of the real estate after four years had elapsed since the purchase.

Inasmuch as the defendant has all along been a pledgee of the collaterals, which were hypothecated to it by Bowen Brothers as security for its loan to them, it is clearly bound to account to them or to their assignee for all moneys received by it from the collaterals. If the defendant had exchanged the bonds directly for the real estate, unquestionably it would be accountable for the value of the real es-

tate, and the pledgeors, upon tendering the sum due upon the loan, would be entitled to a conveyance. In that case it would have exchanged the pledged property for other property, in contravention of its duties as a trustee for the pledgeors to sell the pledged property and apply the avails to the discharge of the debt. Unless the purchase at the sale was, in legal effect, such an exchange, the pledgeors had no interest in the purchase, except upon the theory that the defendant was incapacitated, because of its fiduciary relation towards the pledgeor, from purchasing on its own account.

In considering the rights of the parties, the circumstance that the pledgeors were the grantors in the trust deed may be left out of view, and the case may properly be treated as though the bonds pledged to the defendant, and the trust deed securing them, had been executed by persons other than the immediate parties to the pledge. The interests of Bowen Brothers in the real estate, as grantors in the trust deed, was cut off by the sale made by the trustee, and they occupy no different relation to the transaction as the grantors than if they had never conveyed to the trustee. Their rights, whatever they are, accrue because they were the pledgeors of the bonds. The real estate was not pledged to the defendant, but a sum of money to be produced by a sale of real estate was pledged as an incident of the bonds. That sum, when received, was to become the money of the defendant, and was to extinguish defendant's debt against the pledgeors *pro tanto.* The pledgeors had no interest in it after it was received by the defendant, and whether it was invested profitably or unprofitably, whether in the same land by which it was originally produced or in other lands, was a matter of no concern to the pledgeors.

If the defendant, as a pledgee of the bonds, was under a duty to the pledgeors to intervene at the sale under the trust deed, and to promote a sale on advantageous terms for the benefit of the pledgeors so as to enable them to realize as much as possible upon the bonds, it might well be urged that this duty would subject the defendant to the ordinary disabilities of a fiduciary, and incapacitate it from purchasing directly or indirectly for its own benefit without the consent of the pledgeors. In the language of the court in *Torrey* v. *Bank of Orleans,* 9 Paige, Ch. 663:

"It is a settled principle of equity that no person who is placed in a situation of trust or confidence in reference to the subject of a sale can be a purchaser of the property on his own account."

Where he has a duty to perform which is inconsistent with the character of a purchaser, he cannot divest himself of the equities of the *cestui que trust* to demand the profits that may arise from the transaction. As was stated in *Michoud* v. *Girod,* 4 How. 555, by Mr. Justice WAYNE:

"The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity."

It matters not, when the fiduciary relation exists, that the sale was brought about by a third party without any active procurement or intervention on the part of the fiduciary, or that the sale was public, or that the price was fair, or that there was no intention to gain an unfair advantage. The real question in the case is whether the defendant owed such a duty to the pledgeors.

When negotiable instruments are pledged as collateral, it is the duty of the pledgee, not only so to deal with them as not to destroy or impair their value, but he is to use ordinary diligence to make them available for the payment of the debt. If he suffers indorsed paper to mature without resorting to the necessary steps to charge the indorser, or fails to pursue reasonably the primary parties, he may become responsible for any loss that may ensue. *Whitten* v. *Wright,* 34 Mich. 92; *Russell* v. *Hester,* 10 Ala. 535; *Barrow* v. *Rhinelander,* 3 Johns. Ch. 614; *Lamberton* v. *Windom,* 12 Minn. 322, (Gil. 151.) Even the neglect to prosecute overdue paper may subject the pledgee to liability to the pledgeor in case of loss. *Rice* v. *Benedict,* 19 Mich. 132; *Hanna* v. *Holton,* 78 Pa. St. 334; *Word* v. *Morgan,* 5 Sneed, 79; *Noland* v. *Clark,* 10 B. Mon. 239.

When the pledgee has exercised ordinary diligence to secure the fruits of the pledge for the benefit of the pledgeor, in view of all the circumstances of the particular transaction, his duty has been fully discharged. Applying this standard of diligence to the present case, it seems clear that the defendant was not required by its duties to the pledgeors to become a bidder at the sale, or take any active measure to increase the fund to be realized thereby. By the terms of the trust deed the land was to be sold publicly, after a published notice of 20 days by a trustee, who was to sell or adjourn the sale at his discretion, and whose duty it was to consult the best interests of all parties interested in the sale. The defendant might reasonably rely upon the presumption that such a sale would be fairly conducted and would produce a fair return. It occupied no better position than the pledgeors did in respect to promoting an advantageous sale, and therefore did not stand in the relation of a fiduciary towards the pledgeor. In view of the scheme of the sale, the defendant had a right to infer that the pledgeor intended to consent in advance that the amount of the fund applicable to the bonds should be determined by the result of the sale.

If no active duty to promote an advantageous sale was incumbent upon the defendant, it was not incapacitated from becoming a purchaser at the sale. The reason why a pledgee cannot ordinarily acquire a valid title as against the pledgeor by a purchase of the property pledged, although the sale is regularly and publicly made, unless the pledgeor assents, (*Middlesex Bank* v. *Minot,* 4 Metc. 325; *Bryan* v. *Baldwin,* 52 N. Y. 232,) is because he cannot be at the same time a vendor and a purchaser of the property. The defendant here was not the vendor, but occupied the position of a creditor, or of a *cestui*

*que trust,* seeking to realize as much as might be practicable out of a fund by which its debt was secured. The defendant and the pledgeors stood upon terms of complete equality. The circumstance that the defendant did not actually advance any money upon the purchase is not material. The transaction was the same in substance as if it had paid the purchase price in money, and when it was received back its portion of the proceeds of the sale had applied the amount upon the debt of the pledgeor.

Having reached the conclusion that the defendant had a right to purchase the real estate, and that no equities of the pledgeors were impressed upon the transaction, it is not necessary to consider other questions which have been made in the case respecting the plaintiff's acquisition of the rights of Bowen Brothers.

The bill is dismissed, with costs.