# PERU VAN ZANDT IMPLEMENT CO. v. BURNETT *et al.*

No. 1226.   Opinion Filed March 19, 1912.

(122 Pac. 668.)

1. **PLEDGES—Notes as Collateral—Diligence of Pledgee in Collection.** Where a debtor pledges promissory notes to a creditor as collateral security for the payment of the debtor's principal note, it is the implied duty of the pledgee, in the absence of contrary provisions in the contract, to exercise reasonable diligence in collecting such collateral notes àt maturity.

2. **SAME.** Where the evidence shows that a pledgee of collateral promissory notes sent out notices to the makers of such notes that such notes had matured, and demanded payment of same, and, failing to collect same, had afterward, at the request of the pledgor, placed such notes in hands of pledgor's attorney for collection, and such attorney, after having made demand, being unable to collect same, upon the request of pledgee, returned them to pledgee, who thereupon sent out additional notice and demand, **held,** that such efforts on the part of pledgee were sufficient to constitute due diligence in the collection of such notes.

3. **PLEADING—Action on Principal Note—Diligence in Collecting Collaterals—Liability of Pledgee.** In an action by a pledgee on the principal promissory notes of a pledgor, where it is shown by the record that the pledgee had used due diligence in the collection of certain promissory notes pledged as collateral security, **held,** in the absence of contract holding pledgee responsible for the uncollected balance due on such notes, that he is not liable to pledgor for such uncollected balance, and that such uncollected notes, though in the possession of pledgee, are not a proper set-off against the principal debt.

(Syllabus by Harrison, C.)

*Error from Ellis County Court;*
*A. E. Williams, Judge.*

Action by the Peru Van Zandt Implement Company against William F. Burnett and Ed. C. Henderson.   Judgment for defendants, and plaintiff brings error.   Reversed and remanded.

This suit was filed August 18, 1908, for the recovery of the sum of $285.27 and interest thereon at the rate of 8 per cent. per annum from the date of the notes pleaded in plaintiff's petition.   One note was for the sum of $100, on which the sum of

$49 had been paid, leaving an alleged balance of $51 due and unpaid; the other note, $336.27, on which the sum of $102 had been paid, leaving an alleged balance due in the sum of $234.27; the alleged balances due on both notes aggregating $285.27, which notes were alleged to have been executed to plaintiff by defendants in consideration of certain implements and machinery purchased of plaintiff by defendants, under a contract between plaintiff and defendants providing the manner of sale of implements to defendants by plaintiff, and payment therefor by defendants to plaintiff. Defendants answered, admitting the execution of the notes sued on, but denying the correctness of the balance alleged to be due thereon, because of the failure of plaintiff to collect certain collateral notes which had been given to plaintiff by defendants. Also, by way of cross-action, defendants claim that plaintiff had in its possession collateral notes amounting to more than the defendants' indebtedness to plaintiff, that plaintiff had not collected such collateral notes as it had contracted to do, and had been negligent in the collection of same, that payment of some of the collateral notes had been refused because of failure of plaintiff to repair certain guaranteed implements, and that such collateral notes in the hands of plaintiff amounted to the sum of $151.18 in excess or over and above what defendants owed plaintiff, and asked judgment for such excess. At the April term of said court, 1909, in a jury trial, said cause was tried, resulting in a verdict for defendants in the sum of $151.18. Motion for new trial was presented and overruled, and the case brought here for review.

The material facts are that plaintiff was an implement company of Wichita, Kan.; defendants were merchants in Ellis county, Okla. Plaintiff and defendants entered into a contract by the terms of which plaintiff was to sell and deliver such implements, vehicles, and machinery as defendants desired to purchase, and that defendants should sell such implements and vehicles and take notes therefor—that is, when same was not sold for cash; that defendants should make to plaintiff reports of sales at certain times, and at such times send into plaintiff such

Peru Van Zandt Implement Co. v. Burnett et al.

notes as had been given to defendants by purchasers, to be held by plaintiff as collateral security for the payment to plaintiff of the implements so bought; that, during the course of business transactions between plaintiff and defendants, defendants, being indebted to plaintiff, executed the notes sued on, and turned over to plaintiff a number of collateral notes, aggregating in amount more than the aggregate amount of the notes against defendants. The contract further provided that plaintiff should hold possession of all notes taken from purchasers of machinery, and as fast as collections were made on same would credit the amounts collected on defendants' notes; and provided, further, that such collateral security should be good farmers' notes, and so indorsed to plaintiff as to make them collectible. It is further provided in the contract that plaintiff should repair, or make good to purchasers, all defects in any machinery, vehicles, or implements purchased. At the time suit was brought, plaintiff had collected some of the collateral notes and applied the proceeds as credits on defendants' notes. Some had not been collected, but were still in plaintiff's possession. It developed, however, in the trial of the case, that plaintiff, on request of defendants, had at one time placed these collateral notes in the hands of C. B. Leedy for collection; the said C. B. Leedy being attorney for defendants. Leedy kept the notes for some months, but, being unable to collect them, upon request of plaintiff, turned them back to plaintiff.

*Petty J. Morris* and *Holmes & Yankey,* for plaintiff in error.

*C. B. Leedy,* for defendants in error.

Opinion by HARRISON, C. (after stating the facts as above). Five assignments of error are presented by plaintiff; but only one is seriously urged: "That the verdict is contrary to law and not supported by the evidence." This contention is upon the theory that the holder of collateral securities, consisting of promissory notes, is not liable to pledgor for failure to collect same when due, unless such failure is due to the negli-

gence of the holder in making collection; that the burden is upon the pledgor to prove such negligence; and that no proof of negligence on the part of the plaintiff was offered by defendants in the trial of this cause.

The undisputed facts are that defendants purchased implements, vehicles, and machinery of plaintiff under the terms of the contract which had been entered into between the parties; that defendants had been unable to meet the payments due on these purchases when they fell due; that they had executed their notes for the balance due plaintiff, and had turned over a series of farmers' notes as collateral security; that when their personal notes fell due they were unable to pay them, and renewed their original notes, to secure the payment of which they allowed plaintiff to retain the farmers' notes as collateral; that some of these farmers' notes were collected, and the amount collected thereon credited on the two principal notes, with the exception of $12 collected by the attorney, Mr. Leedy, over which there was some controversy.

The record shows the further undisputed facts that the company mailed out notices to the makers of these notes, notifying them that the notes were due and demanding payment; that upon the request of one of the defendants, Mr. Burnett, the collateral notes were sent by plaintiff to Mr. Leedy, attorney for defendants, for collection. Mr. Burnett, in answer to the question, "Who asked the company to send the notes to Leedy?" answered: "I asked them to. I asked the Peru Van Zandt Implement Company to send the notes to you for collection, and said you would collect all of them, if they would send them to you." The record shows that in response to this request plaintiff sent the notes to Mr. Leedy for collection. Mr. Leedy testified that he sent out notices to the various makers of the notes; that he had them in his possession some eight or nine months; that such collections as he made were remitted to plaintiff, and all of same were credited on defendants' notes, with the exception of the $12, above mentioned, which defendants claimed they had not been given credit for; that there-

after the plaintiff's collection agent, Mr. Beach, upon order
of plaintiff, came to Mr. Leedy's office and got the collateral
notes.    Being unable to collect same, by further order of the
plaintiff, Mr. Beach turned the notes into the hands of Mr.
Morris, attorney for plaintiff, for collection.    Mr. Morris tes-
tified that he sent out notices to the various makers of the
notes, and each and all of them, and that, being unable to collect
such collateral notes, or to collect from defendants on the prin-
cipal notes, he was instructed by the company to bring suit
against defendants on the principal notes; that, pursuant to such
instructions, he brought this action.    These facts are undenied.
We think this sufficient diligence on the part of plaintiff to col-
lect the collateral notes.    Besides this testimony, the contract
itself between plaintiff and defendants throws some light on the
question as to the duties of both plaintiff and defendants in
reference to the collateral notes:

"A further condition of this agreement being a contract en-
tered into this 6th day of February, A. D. 1906, between the Peru
Van Zandt Implement Co. of Wichita, Kansas, hereafter known
as A., and party signing rider, hereafter known as B., is that B.
will report to A. on the first of each month, showing what im-
plements or merchandise of A.'s shipment to B. have been sold
during the preceding month; and B. hereby agrees to remit A.
an amount equivalent to same, at invoice prices, in cash or in
good farmers' notes, payable within the current year; the notes
to be indorsed in such manner as to enable collection by A.    The
said notes to be held in trust and proceeds applied as collateral
by said A. pending the settlement of account, as per terms of sale
and the payment of principal notes, if any such notes have been
executed and delivered in accordance with original agreement.

"If failure should occur to make payments as agreed by B.,
or if any said collateral notes shall reach maturity, A. is author-
ized to collect the same and properly apply proceeds towards the
liquidation of B.'s indebtedness to A., whether due or otherwise.
Should any of the said collateral notes remain in the hands of
A. after all of B.'s indebtedness is paid, they shall be surren-
dered on demand.

"On failure to perform the covenants hereof on the part
of B., A. shall have the right at any time to declare all B.'s obli-

gations due and payable, and may proceed to collect same, as if maturity had actually been reached.

"Nothing in this supplement agreement shall be construed to change in any way, the contract to which it is attached, except as stated in last preceding paragraph of four lines, and it is understood that the terms of payment fixed by the contract to which this rider is a supplement are not changed or waived. [Signed] Burnett & Henderson.

"Accepted subject to the approval of the Peru Van Zandt Implement Co., at Wichita, Kansas. Chas. Fuller, Salesman.

"Approved this 6th day of February, 1906. The Peru Van Zandt Implement Co., by A. Van Zandt."

The contract to which the above supplement is attached and made a part of, among other things, provides:

"The Peru Van Zandt Implement Co. shall hereinafter be known as the Company, and the purchaser as the Agent. Goods warranted against breakage caused by manifest defect in material only. No goods returned under warranty will be credited in account but will be made good and returned, or new goods sent at the Company's option. Breakages caused by defects and made good by new parts, will be charged for when sent, and a corresponding credit will be made, only on return of defective parts, to factory by freight, when so ordered. Any goods reported defective, or not doing good work, the right is reserved to send a man to test them, and if found defective in material or mechanism, the Company will pay all expenses of trip and tests; but if they are found to work perfectly, then the Agent is to pay such expenses. No goods to be returned except on the Company's order, and when so returned the Agent's name and address must be marked upon or securely attached to each article returned, and be sure to send shipping bill on which is stated 'For Repairs,' which secures reduced freight. Freight will be charged in all cases against the Agent. Hardened plow parts, molds, shares, shovels or land sides are not warranted against breakage, nor will any claim for same be allowed after the parts have been in blacksmith's forge. Repairing done elsewhere than at factory will not be paid for by the Company."

From the provisions of the foregoing, the relative duties of the parties may be observed; and from the testimony in the record it appears that a reasonable degree of diligence was exercised by plaintiff to collect the collateral notes.

As to the notes executed by parties who, it was claimed by defendants, had purchased defective implements, and who, because of the refusal of plaintiff to repair the alleged defects, had refused to pay their notes, the record fails to show that the terms of the contract referring to repairs and defects and the manner of obtaining repairs for defects of implements were complied with by the defendants. Nor does it show in the pleadings that these notes were a proper set-off against the notes sued on. However, this phase of the case is not presented in the petition in error, and is not decided.

In reference to the collateral notes held by plaintiff, it is not shown, either in the pleadings or the evidence, that such notes had become barred by limitation, had been lost, or disposed of, or in any manner had become uncollectible by reason of plaintiff's negligence; but, on the other hand, it is alleged in defendants' cross-action that such notes are yet collectible, and that defendants could collect same, if they had them in their possession. On this proposition, however, the settled rule of law is that the pledgor is not entitled to possession of the pledged collateral until payment, or tender of payment, of the principal debt. Am. & Eng. Enc. Law (2d Ed.) vol. 22, tit. Pledge and Collateral Security; Cyc. vol. 31, tit. Pledges. And such payment or tender must be of such validity as to comply with the requisites of the law on tender and payment. See authorities cited above. Hence the controlling question here is the diligence exercised by plaintiff in the collection of the collateral notes. Although there was no expressed provision in the contract between the parties as to what should be done by plaintiff in the collection of the notes, yet the plaintiff was under an implied duty to exercise a reasonable degree of diligence in the collection of same. But:

"The pledgors of collateral notes, having knowledge, power, and opportunity to enforce them against the maker, are chargeable with the legal duty of so doing, and protecting themselves against loss; and by their failure to act the delay of the holder becomes their own." (*City Sav. Bank v. Hopson,* 53 Conn. 453, 5 Atl. 601.)

"Where notes are deposited for collection by way of collateral security for an existing debt, the case does not fall within the strict rules of commercial law applicable to negotiable paper. It falls under the general law of agency; and the agents are only bound to use due diligence to collect the debts." (*Lawrence v. McCalmont*, 2 How. 426, 11 L. Ed. 326.)

"When the pledgee has exercised ordinary diligence to secure the fruits of the pledge for the benefit of the pledgor, in view of all the circumstances of the particular transaction, his duty has been fully discharged." (*Easton v. German-American Bank,* (C. C.). 24 Fed. 523, 23 Blatchf. 271.)

· "The assignee of a note as collateral security is required to observe only ordinary faith and diligence as to its collection." (*Bonta v. Curry,* 3 Bush [Ky.] 678.)

"Where debts are assigned as collateral security, the assignee is not held to the same diligence in collection as is required of the indorsee of negotiable paper." (*Johnson v. Sterling,* 3 Mart. (N. S.) [La.] 483.)

Hence the law requires no more than reasonable diligence on the part of the holder of pledged security. The record shows that plaintiff notified the makers of the collateral notes of the maturity of same and demanded payment; that afterwards, at the request of defendants, the collateral notes were placed in the hands of defendants' attorney for collection; that upon his failure to collect same they were returned to plaintiff; and that plaintiff again demanded payment of the notes by the makers. Under the authorities above cited, and under the entire record, we think the plaintiff used all the diligence required by law; that the collateral notes held by plaintiff were not a proper set-off against the amount due on the principal notes. It is probable that defendants were entitled to some credits which had not been given, and possible that they were entitled to credit for some of the notes payment of which had been refused by the makers because of the refusal of the plaintiff to repair certain defects in the implements for which the notes were given; but, upon the whole, we think the judgment of the court below is erroneous; and it should, therefore, be reversed and remanded.

By the Court: It is so ordered.