## CARTER et al. v. MUNZESHEIMER et al.
### (No. 3064.)

(Court of Civil Appeals of Texas. Texarkana. April 23, 1925.)

1. **Taxation** ☞680—**Bid at tax sale and payment of purchase money constitute purchaser's right.**

A bidder at a tax sale acquires no title to property purchased before and until moment of payment of purchase price bid, as bid and payment of purchase money constitute purchaser's right, and sheriff's deed is only evidence of right.

2. **Taxation** ☞788(5)—**Purchaser at tax sale, failing to explain contradictory recitals in return and deed as to payment, will not be adjudged to have acquired title.**

Where officer's return to tax sale under Rev. St. arts. 3765, 3772, 3779, stated "no money turned over to me," whereas deed stated that purchaser made payment of bid to officer, receipt of which was acknowledged, held, that burden was on purchaser to show circum-

stances authorizing presumption of payment of bid, and where he introduced no extrinsic evidence to sustain such burden, it cannot be said that purchaser acquired title under such sale.

### 3. Taxation ⬗⟾788(1)—Recitals in tax deed contradicting return not controlling, where return shows act of officer invalid.

Rule that, where return is incorrect and in contradiction of tax deed, recitals in deed control, applies only to mere irregularities, and law is contrary where return shows such departure from requirements of law as is sufficient to invalidate act of officer.

Appeal from District Court, Dallas County; Royal R. Watkins, Judge.

Action of trespass to try title by Max Munzesheimer against Ella B. Carter and others, in which Ella B. Carter and husband filed cross-action. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

This is an action of trespass to try title to lot 20 in block R of Webster and Wood's Addition to the city of Dallas, brought by appellee Max Munzesheimer against R. P. Osborne and others. The appellants, E. B. Carter and her husband, made themselves parties to the suit, pleading not guilty, and by cross-action, in the form of trespass to try title, sought to recover the title and possession of the lot, claiming to be owners thereof in fee simple and by adverse possession for ten years. The case was tried before the court, and upon full hearing a judgment was rendered in favor of the plaintiff Max Munzesheimer for the lot.

As material to state, the appellee Max Munzesheimer proved title to the lot by a regular chain of conveyances from the state to R. P. Osborne. Appellee Munzesheimer's immediate title rests upon a judgment rendered in the district court of Dallas county on June 26, 1917, in a suit by the state of Texas against R. P. Osborne for delinquent taxes due on the lot in suit. The judgment was for the amount of the delinquent taxes, penalties, and costs, and foreclosure of the tax lien, and it appears in all things regular on its face. An execution and order of sale were regularly issued under the judgment, and the officer receiving it sold the property under the writ, and appellee Munzesheimer, as he alleges, became the purchaser. The execution, the officer's return, and the judgment were offered in evidence by the appellees. An objection by appellants was seasonably made to the consideration as evidence of the deed and the execution, because of the officer's return. The objection was that the return · on its face shows that no sale was ever consummated, and it could not, therefore, serve as a muniment of title to any pretended purchaser thereunder." The officer's return recites the date of the receipt by him of the execu-

tion and order of sale, and the execution of it on the date mentioned, "by levying upon the following described land, property of the defendant, and situated in Dallas county, Texas, viz.: Lot No. 20, block R, of Webster and Wood's North Park addition to the city of Dallas, Texas, Dallas county." It further recites the advertisement for sale, at the courthouse door of Dallas county on the first Tuesday in the month, specially describing the notices and publications, and reciting the mailing of a copy to the defendant and his attorney of record. The concluding part, signed officially, is:

"And on said 1st day of January, 1917, between the hours of 10 o'clock a. m. and 4 p. m., at the courthouse door of said county, in pursuance of said advertisement, sold said property at public sale to Max Munzesheimer, to whom the same was struck off for the sum of five dollars, that being the highest secure bid for the same; and the said—no money—turned over to me."

The order of sale was issued on November 13, 1917. The date of the return was "entered in volume 1, p. 250, Tax Suit Execution Docket, District Courts of Dallas County, Texas," but no date of entry is shown. The deed has full recitals of all the proceedings, of the judgment, advertisement, notices, and sale. The deed specially recites:

"At which sale the real property herein described was struck off to Max Munzesheimer for the sum of twenty-eight and $38/100$ dollars, he being the highest and best bidder therefor," and "the payment to me of the sum of twenty-eight and $38/100$ dollars, the receipt of which is hereby acknowledged."

The deed was to "Max Munzesheimer," as purchaser, and bears the date of "January 4, 1918." It was acknowledged by the officer before a notary public on "January 4, 1918," and was duly recorded in the county clerk's office on "February 2, 1918." The discrepancies appearing in the dates are admittedly clerical errors. January 1, 1918, was the date of the sale. Objection was made to the deed as evidence, "because the order of sale and return thereon show that no sale was ever consummated."

The appellants called as a witness the constable making the sale, who testified as follows:

"That is my signature. All of this writing is my writing (referring to deed and the return). I don't recall this particular occasion. The order of sale and return does not refresh my memory. I had a very large number of those transactions. I always fill out in my returns exactly what happened at the time. I try to. I always try to put it down just like it happened. I could not say whether or not any money was turned over to me. I don't remember. As a general thing I always got the money. I don't know why I should make a return like this. I don't remember anything about the

consideration recited in that deed; I don't remember those things."

The appellants also called as a witness the clerk in charge of the delinquent tax records in the county tax collector's office, who testified:

"The record I have in my hands is the redemption receipt book, taken from the records. The records show taxes delinquent (on the lot) for the years 1891 to 1900, and 1902, 1904, 1905, and 1907 to 1916. No payments are shown until October 29, 1923. It shows that payment was made by Max Munzesheimer. He paid the years 1909 to 1916; the other years are left off the record on account of the recent act of the Legislature."

The above oral evidence, together with the written instruments stated, constitute all the evidence appearing in the statement of facts filed in this court upon which the appellees could predicate any right of suit.

Connie C. Renfro, Chas. S. McCoombs, and Roy C. Ledbetter, all of Dallas, for appellants.

Ross M. Scott, of Dallas, for appellees.

LEVY, J. (after stating the facts as above). [1] The precise point made by the appellants is that the officer's return showed on its face that "no money" was received by the officer on the bid made at the sale, and, there being no evidence to the contrary, "there was therefore," as a legal consequence, "no valid sale, and the constable had no authority to execute the deed to the land sold." Stated in other words, the purchaser's title did not become perfect until and unless his bid was accepted and the payment made, although there was a valid judgment, execution, and sale; and the burden of proving this fact was upon the purchaser. Manifestly, the title claimed by the purchaser was not legally effective if there was failure of compliance with the bid, for the law is well settled that the bidder acquires no title to the property purchased before and until the moment of payment of the purchase price bid. The "bid and payment of the purchase money constitute the purchaser's right, and the sheriff's deed is only evidence of right." Fleming v. Powell, 2 Tex. 225; Miller v. Alexander, 8 Tex. 36; Donnebaum v. Tinsley, 54 Tex. 365; Logan v. Pierce, 66 Tex. 126, 18 S. W. 343; Higgins v. Bordages (Tex. Civ. App.) 28 S. W. 351. As the record appears, the appellee offered and read in evidence the execution and the return and the officer's deed. He relied upon these instruments, and he offered no additional evidence in explanation of the difference between the recitals of the return and the deed. The return states the facts to be that the lot was "sold" to appellee Munzesheimer "for the sum of five dollars," and that "no money" was "turned over to me." The officer's deed made under the same sale recites the facts to be that the lot "was struck off to Max Munzesheimer for the sum of twenty-eight and 38/100 dollars, his being the highest and best bid therefor," and that he, as the purchaser, made "payment to me of the said sum of twenty-eight and 38/100 dollars, the receipt of which is hereby acknowledged."

[2] If it be true, as recited in the officer's deed, that the purchaser made "payment" of the bid to the officer, "the receipt of which is hereby acknowledged," then the purchaser has made proof of the payment of the bid, entitling him to a judgment in his favor. If, however, it be true that "no money" was "paid to me," as recited in the officer's return, then there would affirmatively appear no legal sale of the property, and a want of any title in the purchaser. For the officer is not authorized to "execute and deliver to the purchaser a conveyance," except in the event "a sale has been made and the terms thereof complied with." Article 3765, Rev. Stat. "When the terms of the sale shall not be complied with by the bidder," the officer, as expressly provided, "shall proceed to sell the property again on the same day, if there be sufficient time; but, if not, he shall readvertise and sell the same as in the first instance." Article 3772, Rev. Stat. It is in case of "the collection of the money" that "the execution shall be returned forthwith" after advertisement and sale. Article 3779, Rev. Stat. In the circumstances, without further explanation, there is no room for the court to indulge a presumption and to hold there is prima facie evidence that the officer discharged his duties and collected the money. The recitals in the two instruments, apparently, are contrary and are contradictory, and one of them at least is without basis of fact. The effect of it was to impose upon the appellee the burden of showing circumstances legally sufficient to aid and authorize a presumption of the payment of the bid. For so long as the return stood in evidence, as evidence offered by the appellee, the recited fact would have to be regarded as correct, and could not be disregarded, unless otherwise explained by additional circumstances legally competent to justify drawing different conclusions. The doubt produced, as to whether or not the officer did discharge his duty and collect the money, would have to be removed.

[3] The testimony as given by the officer is of little evidentiary value. Ordinarily, as held, as the return is made after the sale, if it be incorrect and in contradiction of the deed, the recitals in the deed will control, and the return cannot affect the purchaser's title already perfected by the bid and payment of the same. Holmes v. Buckner, 67 Tex. 107, 2 S. W. 452, and authorities cited; King v. Duke et al. (Tex. Civ. App.) 31 S. W. 335. But this rule has application to a mere irregularity or defective execution of a valid power rendering the performance voidable but not void. The rule of law is to

the contrary where the return states facts which show such departure from the requirements of law as is sufficient to invalidate the act of the officer. As stated in Howard v. North, 5 Tex. 290, 51 Am. Dec. 769:

"Where the return does not state facts to the contrary, the presumption would be that the officer had not exceeded his authority. The return in this case is defective in not stating the place, nor with sufficient certainty the time of the sale, but it states a fact which would have enabled the plaintiffs to prove with facility that the sale did not take place on the first Tuesday of the month, if such had been the truth. The sheriff certifies that the sale took place on June 3, 1845. If this be not the first Tuesday of that month the fact should have been proved by the plaintiffs; and if established, it would have invalidated the title of the purchaser. This objection is of a different character from that of a want of notice of sale. The former is an objection to a want of power in the officer; the latter to an irregular exercise of legitimate authority. For the latter the officer may be punished, but the title of the purchaser cannot be affected. But where the time and place of a public sale are prescribed the sheriff has no authority to sell at any other time or place, and should he do so his acts are not merely irregular, but void, and can confer no title. This distinction can operate no hardship on purchasers or destruction of rights of innocent parties."

See, also, Grace v. Garnett, 38 Tex. 157; Sinclair v. Stanley, 64 Tex. 67; Moody v. Moeller, 72 Tex. 638, 10 S. W. 727, 13 Am. St. Rep. 839. The surrounding circumstances and collateral facts, when offered in evidence, may show that the officer intended to use the words, "Said no money turned over to me" in the particular sense and meaning merely that the money was not handed to him but to some other authorized person. If so, the return would be consistent with the deed. We therefore conclude, that as there is insufficient evidence in the record to warrant the judgment in favor of appellee, that it should be reversed and the cause remanded.