**WYNN v. PIG STAND CO.** (No. 3176.)

Court of Civil Appeals of Texas. Amarillo. April 3, 1929.

Rehearing Denied May 1, 1929.

Niblo & Dodd, of Dallas, for appellant.
George Sergeant, Wm. M. Cramer, and Taylor & Irwin, all of Dallas, for appellee.

RANDOLPH, J. This is an appeal from an order of court granting a temporary injunction in the suit of appellee against appellant, restraining the appellant from the use, in his business, of a trade-name and a trade-mark. The trial court, having sustained a general demurrer to the defendant Wynn's answer, nevertheless went into a hearing of the questions presented and thereupon ordered the issuance of a temporary injunction, from which order the defendant Wynn has appealed.

The trade-name "Pig Stand" and the trade-mark "Pig Sandwich" are here given:

Trade-Name.

Trade-Mark.

One Jesse G. Kirby had adopted the trade-name and trade-mark in his business of preparing and selling sandwiches; this business prospered, and Kirby thereupon promoted the appellee corporation, and, after its organization, sold said business, its good will, and the trade-name and trade-mark to that corporation.

Appellee's (plaintiff's) petition alleges that Kirby established his business in Dallas county, Tex., about April 15, 1922, by erecting and operating a sandwich stand, using large tin signs cut in the shape of a pig, with the words "Pig Stand" across same as a trade-name for his business, and called his sandwiches "Pig Sandwiches," which is illustrated by the above emblem and signs; that on August 25, 1922, Kirby filed with the secretary of state of the state of Texas his sworn statement that he was operating his business under the assumed name of Pig Stand for the purpose, evidently, of complying with the "assumed name" statute; that his business grew; he added other sandwich stands in other states, as well as in Texas; that under date of November 10, 1923, he filed with the United States Patent Office his application for registration of the Pig Sandwich sign as a trade-mark, which application was granted and such trade-mark registered; that on the 1st of December, 1923, Kirby filed his application wtih said Patent Office for registration of the Pig Stand sign as a trade-name, and this was granted and registered in that office; that Kirby assigned all his right, title, and interest in such trade-name and trade-mark, along with his sale of the business, good will, etc., to the appellee herein. Appellee further alleged that one Harry Seymour operated a sandwich stand about three miles west of the city limits of Dallas, Tex., on the Fort Worth pike, advertising same as Pig Stand, and the sandwiches sold thereat

as Pig Sandwiches. After his death, the appellant herein, having been willed said stand, took over that property, continuing its operation, and he is now operating same without any right under said trade-name as a Pig Stand, and is advertising the sandwiches sold by him as Pig Sandwiches, and that such conduct is an infringement upon the appellee's trade-name and trade-mark and constituted unfair competition in that the public was being led to believe that the sandwiches purchased of appellant's stand are the same as those prepared by appellee; and that such conduct had injured appellee's business, and that unless appellant was restrained, appellee would suffer irreparable injury.

The appellant filed his answer, consisting of general demurrer, special demurrers, general denial, and special answers not necessary to set out here.

The evidence substantially sustains the allegations in appellee's petition, but in some respects will be presented in our discussion of the questions which we shall hereafter discuss.

Kirby and one Jackson (who had become interested with Kirby in the Pig Stand business) on September 10, 1923, sold said business to D. C. Hamilton and D. H. Zachman, as same was then situated on the Fort Worth pike. The same became effective by virtue of the following instrument and the acceptance thereof:

"Offer and Acceptance of Sale.

"The State of Texas, County of Dallas:

"Sellers, J. G. Kirby and Dr. R. W. Jackson, offer for sale, for a period of fifteen (15) days from date hereof, the following described property:

"The entire building, leasehold, business, good will, furniture, fixtures, utensils and stock on hand, all known as the business property constituting Pig Stand No. 1, located on the S. W. Corner of Fort Worth Pike and Cockrell Hill Road, in the N. E. Corner of the I. L. Schwedtman farm, in Dallas County, Texas, same being 150 feet on the Fort Worth Pike and 90 feet on the Cockrell Hill Road.

"Terms of Sale.

"Consideration Two Thousand ($2,000.00) Dollars, payable as follows:

"$500.00 cash to be paid upon consummation of this trade and delivery of bill of sale; balance of $1,500.00 to be paid at the rate of $150.00 per month for the first two months after the date of this sale, the first payment thereof being due and payable thirty (30) days after the date of the consummation of sale, then $100.00 per month for the next succeeding four months, and balance then due at the rate of $133.33 each succeeding month, said note bearing interest at the rate of 8% per annum, payable monthly as it accrues.

"As a further part of this offer the sellers agree to furnish buyers a lease on said Pig Stand above mentioned, for a period of from one to two years, at a monthly rental of $25.00 per month, said rent payable monthly in advance of J. G. Kirby and Dr. R. W. Jackson.

"As a further part of this offer, sellers agree that the buyers are to have the right to use the trade-mark, to wit: Pig Sandwiches. These rights are to continue as long as stand is operated outside of the city limits in Dallas County, Texas, and on the Fort Worth Pike.

"The buyers agree not to use the words "Pig Stand" on the above mentioned property after January 1, 1924.

(Pig Sandwich)

(Trade-Mark)

(Registered)

"This offer is made subject to a lease on part of the premises above described, whereon J. O. Curry owns and operates an oil and gas station with a lease which expires Jan. 1, 1924, with the understanding that the proceeds from said lease up to that date shall be paid to sellers.

"It is obligatory upon the purchasers to uphold the good will of said business known as Pig Stand No. 1 and to preserve the present standard and quality of goods sold and dispensed from said stand and in this connection the sellers reserve the right to inspect the products being sold by said Pig Stand to determine whether this part of said offer is being complied with.

"The sellers are to prorate the rental on said premises for the current month up to the date of closing.

"The purchasers are to deposit $500.00 cash to guarantee the full performance of the terms and conditions hereinabove set out; said $500.00 to be forfeited to the Sellers as full liquidated damages in the event purchasers fail to comply with the foregoing terms without fault of the Sellers within fifteen days from date hereof, and in the event Sellers fail to comply with the terms hereof, the said $500.00 shall be refunded to Purchasers within the said fifteen days.

"In witness of the foregoing offer, we, the said Sellers, hereto set our hands this, the 10th day of September, A. D., 1923.

"J. G. Kirby.

"Dr. R. W. Jackson.

"We, the undersigned purchasers, do hereby accept in full each and every term of the offer and in token of our said acceptance do hereby deposit the sum of $500.00 as provided in said offer.  D. C. Hamilton.

"D. H. Zachman."

Hamilton and Zachman took charge of the business and operated it, and later sold an interest therein to one R. E. Jacobs. At the time Hamilton and Zachman took charge of the stand, it was, as stated, located on the south side of the Fort Worth pike, and while they were operating same they moved across the road onto the location where the appellant now conducts his business, and they also moved the sign in front of the building, containing "Original Pig Stand No. 1" with the emblem of the pig on top. Jacobs and Zachman and Hamilton sold the stand and business to Harry Seymour on December 20, 1924. Harry Seymour continued the operation of it until he died in 1926, and, at his death, as stated, the property passed to appellant under Seymour's will, and, as executor and owner, the appellant continued its operation down to the date of the trial.

The bill of sale from Hamilton and Zachman to Jacobs, and from Hamilton and Zachman and Jacobs to Seymour conveyed "all of our interest and ownership in any manner in and to the entire building, leasehold, business, good will, furniture, fixtures, utensils, and stock on hand of the business, including the lease and the privilege of using the words 'Pig Sandwiches' and the trade-mark thereto, which we have by reason of the assignment of same from the original owner, all of said business consisting of what is known as Pig Stand No. 1," etc.

On the 13th day of October, 1924, Jesse G. Kirby filed his bill in equity in the District Court of the United States for the Dallas Division for the Northern District of Texas, seeking injunctive relief against Harry Seymour, his employees, etc., from placing or causing to be placed the described trademarks or any imitation of same upon any stand or stands or upon any sandwiches and from selling any sandwiches under said trade-mark or any imitation thereof.

The parties to the litigation in such cause in said United States District Court thereafter entered into the following agreement for judgment therein:

"In the District Court of the United States for the Northern District of Texas, at Dallas, in Said District.

"Jesse G. Kirby v. Harry Seymour. No.———
In Equity.

"Stipulation.

"The parties hereto show to the court that they have reached an agreement and adjustment of the matters herein in controversy, which said agreement is as follows:

"That plaintiff waives all damages for past infringements of the trade-marks herein in controversy.

"That the defendant be permanently enjoined from infringing upon the trade-marks of plaintiff, as is set out in his bill.

"The costs of suit be taxed against the defendant.

"Wherefore, the parties hereto pray that judgment of the court be entered, upon the

court's approval of this stipulation, in conformity hereto.

"William B. Miller,
"Attorney for Defendant.
"Taylor & Irwin,
"Attorneys for Plaintiffs.
"William M. Cramer."

On the 5th day of June, 1925, the said United States District Court entered a decree recognizing the foregoing agreement and decreeing that the defendant, Harry Seymour, his agents, servants, workmen and employees, be and are hereby enjoined for the remainder of the term of the life of the letters of trade-marks, from further infringing the same, that the plaintiff recover no damages for past infringements, and that the costs be taxed against defendant.

An application was made to the authorities of the state of California by the appellee to do business in the state of California, and a certificate was issued on the 23d day of March, 1925, in compliance therewith.

The application made to the Patent Office of the United States by Kirby for registration of the trade-mark "Pig Sandwiches" shows it had been in bona fide use for not less than one year in interstate commerce. This application was filed November 10, 1923.

The articles incorporating the Pig Stand Company are dated the 25th of October, 1923, and recorded in the office of the secretary of state of Texas on November 2, 1923.

The record discloses that there was some litigation in the district court of Dallas county in an effort to restrain the defendant from the use of the trade-mark, but there is no copy of the judgment of the said district court in the statement of facts, and we do not deem it necessary to discuss any phases of the case arising out of such said court litigation.

The appellant's first proposition presents the contention that the offer and acceptance of sale from Kirby and Jackson to Zachman and Hamilton is not a license to use the alleged trade-mark, but is a sale of the business, together with its good will as a going concern, and including the right to use the alleged trade-mark, and that these rights were not revocable at the will of the sellers and were not terminated by the sale to the buyer, but passed to the successive owners of the business as an incident to its good will, and neither a trade-name nor a trade-mark can exist independently of a business or trade.

The offer and acceptance, set out in full above, expressly provide that the buyer is not to use the trade-name "Pig Stand" after January 1, 1924. Hence, the right to so use such trade-name is not in question now, nor was it when this suit was brought. The time in which to use it had expired. This leaves for our consideration only the questions arising from the use of the trade-mark "Pig Sandwich" by appellant.

The appellant makes the further contentions that the alleged trade-marks are not capable of being erected into valid trade-marks, because they do not identify the origin, ownership, or manufacture of the goods sought to be protected, and the evidence does not show that the alleged trade-marks were annexed to and accompanied the goods into the market, so as to identify them.

█ The plaintiff pleaded res judicata in that the judgment of the United States District Court above noted adjudicated and settled the differences here presented. The judgment has been noted above and the plaintiff's complaint or petition in said United States court and the evidence in this case sustains the plaintiff's plea of res judicata, unless the appellant's contention that the judgment is void because, first, at the time the suit was filed by Kirby, and at the time the judgment was rendered, Kirby had already disposed of his individual ownership in the Pig Stand name and Pig Sandwich trade-mark, to the Pig Stand Company, and had no ownership therein to entitle him to such judgment, and, second, that the law did not authorize the registration of the trade-name and trade-mark for the reason that they did not identify the origin, ownership, or manufacture of the goods, and that the alleged trade-marks were not annexed to the goods in such a way as to accompany the goods into the market, can be sustained.

This defense involved the presentation of facts which existed at the time the suit was filed and at the time the judgment was rendered. Such being the case, when the parties to the suit in the United States court agreed that the judgment might be rendered, they did so in full knowledge of the existence of all such defenses, and by their agreement and by the judgment entered upon that agreement were estopped from raising the questions in this suit.

It will be observed that the consideration for the judgment was that the plaintiff should waive his right to any damages by reason of past infringement of the trade-mark. The ownership of the trade-mark, the origin of the goods, the question as to whether or not the sale of the good will of the business carried with it the ownership of the trade-mark, were all concluded by the judgment in the United States District Court.

Kirby, as the owner of the trade-mark and goods, together with the stand, sold and conveyed them to the plaintiff, the Pig Stand Company. Under this conveyance, the plaintiff was privy in estate to Kirby, and under the conveyance to Seymour by Zachman and Hamilton and Jacobs and the will of Seymour under which appellant claims ownership, there was a privity of estate between the appellant, Wynn, and the said Harry Seymour, against whom the United States court rendered the judgment.

The effect of a judgment is to preclude a re-examination into the truth of the matters decided, and such judgment is therefore binding upon the parties thereto and their privies. 21 C. J. 1064, § 22.

A judgment by agreement is no less effective as a bar or estoppel than one rendered on contest or trial, although the pleadings would not, in a contested case, authorize the judgment. 34 C. J. 779, § 1198.

In the case of Coleman v. Davis, 36 S. W. 103, the Fort Worth Court of Civil Appeals defines a privy in estate to be: "Any person who must necessarily derive his title to the property in question from a party bound by a judgment."

Mr. Black, in his work on judgments, vol. 2, p. 637, § 534, defines privies as: "Those who are so connected with the parties in estate, or in blood, or in law, as to be identified by them in interest and consequently to be affected with them by the litigation, as lessor or lessee, heir or ancestor, executor and testator."

The parties to this suit, the one claiming by purchase from Kirby and the other claiming by will from Seymour, are each such privies in estate and bound by the judgment in the United States District Court, they being successors in title to the parties to the judgment. Lewis v. Alexander's Est., 34 Tex. 608; Bird v. Montgomery, 34 Tex. 714–716.

Purchasers from parties to an action involving the title to property are the same in legal contemplation as such parties where they acquired their title after the institution of the original suit and are bound by the judgment formerly rendered. Henry v. Thomas (Tex. Civ. App.) 74 S. W. 599. Writ denied.

A privy is one who has acquired an interest in the subject-matter after the rendition of the judgment. Village Mills Co. v. Houston Oil Co. (Tex. Civ. App.) 186 S. W. 785.

A judgment is conclusive, not only as to the subject-matter determined, but as to other matters which might have been litigated. Bomar v. Smith (Tex. Civ. App.) 195 S. W. 964, 965; Nichols v. Dibrell, 61 Tex. 539; Freeman v. McAninch, 87 Tex. 132, 27 S. W. 97, 47 Am. St. Rep. 79; Fred Mercer Dry Goods Co. v. Fikes (Tex. Civ. App.) 211 S. W. 830.

The subject-matter of this suit being practically identical with that involved in the judgment in the United States District Court, such judgment is a bar to the defensive plea in this case. Tompkins v. Hooker (Tex. Civ. App.) 200 S. W. 193–195.

A judgment, in respect to its operation upon the subject-matter, is to be taken as disposing by implication of all questions or issues raised. McKenzie v. Withers (Tex. Sup.) 206 S. W. 503, 505.

In passing upon a plea of res judicata, the issues involved in the suit are determined from the pleadings. I. & G. N. Ry. Co. v. Concrete Inv. Co. (Tex. Civ. App.) 201 S. W. 718.

Holding to the view that the judgment in the United States District Court is res judicata of the questions herein presented, we do not deem it necessary to discuss the other propositions submitted, and therefore affirm the judgment of the trial court.