**SMITH v. COOK et al.**

No. 10705.

Court of Civil Appeals of Texas. Galveston.

March 9, 1939.

Rehearing Denied April 13, 1939.

C. A. Teagle, Williams, Lee, Sears & Kennerly, and Fred W. Moore, all of Houston, for appellant.

Quinton Wright, of Houston, for appellees Kral.

Bracewell & Spiner, of Houston, for appellee Nellie E. Cook.

MONTEITH, Chief Justice.

This is an appeal from a judgment of the 55th District Court of Harris County, growing out of and a part of an action originally brought by M. Z. Cook and wife, Nellie E. Cook, Fred T. Smith, and Honerkamp-Pech Lumber Company against Arthur J. Kral and wife, Flora Kral, and other parties defendant not necessary to be here mentioned, for debt and foreclosure of certain liens against Lots 103 and 104 of the W. L. Edmundson Addition to the City of Houston, out of the Luke Moore survey in Harris County, Texas.

The property involved was originally sold by M. Z. Cook to Arthur J. and Flora Kral. Kral and wife, as a part of the purchase price thereof, executed their note in favor of M. Z. Cook and Nellie E. Cook for the sum of $8000, secured by vendor's and deed of trust liens against said property. On December 9, 1929, Cook and wife assigned said $8000 note, with the liens securing it, to Fred T. Smith as collateral to secure him in the payment of their note to him for the sum of $6000.

The Honerkamp-Pech Lumber Company and the defendants in the original suit, with the exception of Arthur J. and Flora Kral, asserted liens growing out of the erection by them of certain improvements on said property after its purchase by the Krals.

On February 28, 1932, by agreed judgment, all parties to the original suit were awarded judgment against Arthur J. and Flora Kral for the various sums due them and for the foreclosing of their liens. It also provided for the sale of said property under execution 90 days after date of judgment. Fred T. Smith was awarded judgment for $7051, with interest from date of judgment at the rate of 10% per annum. His lien was held to be superior to the liens of all other parties to the suit, and provision was made that he be paid first out of the monies derived from the sale of said property under execution. The judgment also provided for the appointment of a trustee to negotiate a loan on the property for the purpose of paying off said liens against it.

On May 9, 1932, said trustee reported that he was unable to secure a loan, and said property was advertised for sale and sold on June 7, 1932, to M. Z. Cook on his bid of $9000. The sheriff's return, however, recites that Cook failed to comply with his bid and that said sale was not consummated, and that no deed was delivered to Cook. The property was again advertised for sale under alias execution and order of sale, and on March 2, 1932, was sold to Fred T. Smith on his bid of $5000. The sheriff's return recites that the deed was executed and delivered to Fred T. Smith.

Shortly thereafter, appellee Nellie E. Cook, individually and as Independent Executrix of the Estate of M. Z. Cook, deceased, filed an action in the main suit, contending that the title to the property in controversy passed to M. Z. Cook at said first sale on June 7, 1932; that prior to said sale, Smith had agreed that Cook should have a reasonable time after the sale to raise funds with which to pay his indebtedness to Smith, and that Smith had failed to carry out his said agreement. She alleged in the alternative, that if said sale to Smith on August 2, 1932, on alias execution and order of sale, was valid, then said sale and purchase was for the joint use and benefit of herself, her husband, and the said Fred T. Smith.

This action was consolidated with an action filed by Arthur J. and Flora Kral against all parties to the original suit to set aside both of said sales.

Fred T. Smith died subsequent to the perfection of this appeal and his surviving wife, Clara B. Smith, individually and as his Independent Executrix prosecutes this appeal.

On the trial of that portion of this action upon which this appeal is based, the jury, in answer to issues submitted, found that at the time of the issuance of execution on which the June 7, 1932, sale was

based M. Z. Cook did not have an agreement with Fred T. Smith, either individually or through his attorney, that he might have a reasonable time after said sale within which to negotiate a loan to pay the Smith indebtedness; that the time elapsing between June 7 and August 2, 1932, was a reasonable time in which to negotiate said loan; that the Daily Court Review, the paper in which said alias sale was advertised, was a newspaper of general circulation, and further facts in reference to the market value of said property on August 2, ·1932, and the rental value thereof.

The court rendered judgment, holding that it was immaterial as to whether the title passed to Cook under the first sale, or to Smith under the second sale, since, under the undisputed evidence, Smith had held possession of said property as a mortgagee in possession, and that Nellie E. Cook, individually and as Independent Executrix of the Estate of M. Z. Cook, was entitled to the title and possession of the property in controversy upon payment to Fred T. Smith of the balance due him of $4794.39.

After the rendition of the judgment, appellee tendered appellant's attorney in court the sum of $5000 in cash. The tender was refused.

Appellant contends that the title to said property did not pass to M. Z. Cook under the sale of June 7, 1932; that the title acquired by Fred T. Smith under alias execution and order of sale, dated August 2, 1932, not only divested all other parties to said suit of title to said property, but that the sale terminated the equities of redemption of M. Z. Cook and Nellie E. Cook, if any existed; that if it should be held that after the sale of August 2, 1932, Smith held the property in controversy in trust, or as collateral to secure payment of the amount due on the Cook note for $6000, that there was no basis in the record for the court's finding that the indebtedness of Nellie E. Cook to Fred T. Smith amounted to only $4794.39.

█ We are unable to sustain appellee's contention that title to the property in controversy passed to M. Z. Cook under the execution sale of June 7, 1932.

The jury found, in answer to issues submitted, that there was no agreement that Cook should have a reasonable time within which to raise funds to pay his indebtedness to Smith, and the record shows conclusively that there was an understanding between the parties that the sheriff's deed under the June 7, 1932, sale was not to be delivered to Cook or become effective until the amount bid by him had been paid.

Upon Cook's failure to pay the purchase price bid, the writ of execution was returned not executed, and the property was re-advertised under alias execution and order of sale, and sold on August 2, 1932, to Fred T. Smith.

It is uniformly held in this state that under a sale of real estate under execution, the bidder acquires no title to the property purchased before and until the payment of the purchase price bid. The bid and payment of the purchase price constitute the purchaser's right and the sheriff's deed is only evidence of that right; Carter v. Munzesheimer, Tex.Civ.App., 272 S.W. 277; Tanner v. Grisham, Tex.Com.App., 295 S.W. 590; Warman v. Wurzbach, Tex. Civ.App., 51 S.W.2d 751.

█ It is the contention of appellee that the purchase by Smith of the property in controversy on August 2, 1932, under alias execution and order of sale, was for the benefit of M. Z. Cook, Nellie E. Cook, and himself, and that said property was burdened with a trust in behalf of M. Z. Cook and Nellie E. Cook under the principle that, where the pledgee of a mortgage assigned to him buys the mortgaged property himself, he holds it in trust for the pledgor. This principle is unquestioned. The principle, however, does not apply where the pledgee notifies the pledgor that he will act solely for his own interest, or where the parties have agreed and consented that the pledgee may purchase the mortgaged property free of trust, and it does not apply, of course, where the relation of pledgor and pledgee has been terminated prior to the purchase.

█ It is further held that where the pledged collateral is secured by a deed of trust, the pledgee may purchase at a sale conducted by the trustee without any obligation to account to the pledgor.

█ Unquestionably, the relation of pledgor and pledgee existed between M. Z. Cook and his wife, Nellie E. Cook, and Fred T. Smith up to the time of the entry of the agreed judgment of February 28, 1932, at which time the parties themselves, by their action in having said agreed judgment entered, definitely terminated the relation of pledgor and pledgee which had

previously existed between them, and agreed among themselves that the property in controversy be sold at execution sale and the proceeds derived from its sale be set aside and applied to the payment of (1) the amount due Smith on his $6000 note; (2) the balance due Cook and wife after their indebtedness to Smith had been paid in full; and (3) the amounts due to the other parties to the suit in the order therein named. It was also provided in said agreed judgment that plaintiffs should have the right to bid at the sale of such property in the same manner as any other prospective purchaser.

The rule is well settled in this State that a judgment by agreement is, in effect, a contract between the parties thereto, and is as effective and binding upon them, as a bar or estoppel, as one rendered on contest or on trial; Wynn v. Pig Stand Co., Tex.Civ.App., 16 S.W.2d 961; Tyner v. City of Port Arthur, 115 Tex. 310, 280 S.W. 523; Posey v. Plains Pipe Line Co., Tex.Civ.App., 39 S.W.2d 1100; this is held to be true though the pleadings in a contested case would not authorize the judgment; 34 C.J. 779. And it is held in the case of Posey v. Plains Pipe Line Co., supra, that a judgment by consent waives all errors committed before its rendition, and that they will not be noticed by the appellate court.

Further, Cook's efforts, both prior and subsequent to the June 7, 1932, sale, to raise funds with which to discharge his indebtedness to Smith, and the fact that he sought an injunction against Smith and the sheriff of Harris County restraining the sale of August 2, 1932, alleging that Smith was hostile to him and was seeking to deprive him of his property, indicates that Cook had full knowledge of the fact that Smith would act at such sale solely for his own interest.

It is held in the case of Schelp v. Nicholls, 300 S.W. 1031, 1034, in a case by the Missouri Court of Appeals: "The rule of law, according to the weight of authority, is to the effect that the pledgee of a note, secured by a mortgage, as collateral security, who forecloses the same and purchases the property at the foreclosure sale, holds the title subject to a trust in favor of the pledgor. This rule, however, has no application where by agreement between the parties the pledgee is authorized to purchase the property mortgaged free of any trust in favor of the pledgor. It is also held inapplicable where the pledgee forecloses the mortgage at the request of the pledgor and purchases the property, after notifying the pledgor of his intention to act only in his own behalf at the foreclosure sale."

It is said in the case of Jennings v. Wyzanski, 188 Mass. 285, 74 N.E. 347, 349, by the Supreme Court of Massachusetts, that:

"The plaintiff contends that notwithstanding the fact that in the present instance the foreclosure was by sale, because the title to the mortgaged land still is in effect in the Wyzanskis, as between them and the plaintiff, the land is merely substituted for the foreclosed mortgage, and may be redeemed from the pledge. We think this contention cannot be sustained. If the foreclosure sale had placed the title in a third person as purchaser, it is plain that the pledgor no longer would be able to redeem the land, and that the net proceeds of the foreclosure sale would be a sum to be applied as of the date when they accrued, in reduction of the debt to secure which the pledge was given. We see no reason to hold otherwise when the pledgee himself is the purchaser at a valid foreclosure sale, at which he has, under the power, a right to buy for himself."

The Supreme Court of the United States, in the case of Easton v. German-American Bank, C.C., 24 F. 523; Id., 127 U.S. 532, 8 S.Ct. 1297, 1300, 32 L. Ed. 210, held that a creditor whose debt is secured by a deed of trust on real estate to a third party as trustee, may purchase the property at a sale by the trustee under the terms of the trust; and if he credits the debtor on the mortgage debt with the amount of the purchase money, it is in fact and in law a money payment to the use and benefit of the debtor. The facts in the Easton case are similar in many respects to those in the instant case, with the exception that the sale in the Easton case was by a trustee under a deed of trust. The court, in the following excerpts from its opinion, draws a distinction between a sale by a trustee and that of a mortgagee of real estate solely under judicial proceedings, for foreclosure by decree of a court. The court says:

"The land in question was conveyed by the debtor, not directly to the creditor, but to a stranger. That stranger, by virtue of the conveyance, held the legal title in trust for the purpose of sale accord-

ing to the power contained in it. That power he executed in strict accordance with its terms. A default has been made by the debtor, and at the request of a part of the creditors he was required to sell the property at public auction to the highest bidder, without limit or condition, in order that the proceeds of the sale might be applied to the payment of the debt to secure which the land had been conveyed in trust. The sale was made under the direction and control of the trustee, but, as the creditors who held the obligations of the debtors were not themselves trustees, there was nothing, either at law or in equity, to prevent their being bidders, and becoming buyers at the trustee's sale. In reference to that sale they occupied no position towards the debtor of trust or confidence. They were charged, in respect to it, with no duty whatever. They had an interest in it that the property should produce enough to satisfy the debts which it had been given to secure. Beyond that they had neither interest nor duty; and in their own interest the creditors had a right to bid so as to prevent the property from being sacrificed at the sale below its value, in order that it might be made to produce the largest amount towards payment of the debt.

"The relation of a creditor secured by such a deed of trust to a sale made under a power given to a stranger as trustee does not differ from that of a mortgagee of real estate sold under judicial proceedings for foreclosure by a decree of a court of equity. At such a sale nothing is more common than for the mortgagee to become the purchaser; and it is as beneficial to the debtor as to himself that he should be permitted to enhance the competition at such a sale in order to protect his own interests. In that respect, his own interest coincides with that of his debtor, as it is for their mutual benefit that the property should not be sacrificed so as to leave any part of the debt unpaid."

 The principle that a pledgee cannot ordinarily acquire a valid title as against the pledgor unless the pledgor assents thereto is governed by the rule that the pledgee cannot be, at the same time, a vendor and a purchaser of the property involved.

In the case of Plucker v. Teller, 174 Pa. 529, 34 A. 208, 209, 52 Am.St.Rep. 825, in a state of facts similar in many respects to those in the present appeal, the court held: "The principle of all the cases is that, the pledgee being within certain limits, a trustee is therefore presumed to act for the pledgor's interest, as well as his own; but their interests are not identical, and, where they may require different action, the pledgee is entitled to regard his own, after having put the other party on his guard, by notice to him that he must look out for himself. This is what appellant did. When he bought, therefore, he bought for himself, and in his own right. He thereby elected to take the property on account of the debt. If he had subsequently sold it at a loss, he could not have called upon the plaintiff to make good the deficiency, for there was evidence that the latter had distinctly refused to preserve his interest by any separate bid of his own at the sale. On the other hand, appellant, having taken the risk, was entitled to the profit on the resale."

The motion filed herein by appellant to strike brief of appellees Kral, which was ordered taken with the case, is overruled.

The facts appearing to have been fully developed herein, under the conclusions reached, as above indicated, it is our duty to sustain the contention of appellant, and to reverse and render the judgment of the trial court, and to here render judgment for the appellant, and it is so done.

Reversed and rendered.